UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Friedman
Argued at Fredericksburg, Virginia

TONY JACOB THOMAS

v.      Record No. 1234-21-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
APRIL 11, 2023

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
James E. Plowman, Judge

T. Brooke Howard, II (Howard, Clark & Howard, on brief), for
appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Appellant Tony Jacob Thomas appeals his conviction for unlawful wounding, in violation of
Code § 18.2-51. On appeal, Thomas contends that the Fauquier County Circuit Court erred by
convicting him pursuant to the first proposed plea agreement rather than the second, renegotiated
plea agreement. He argues that the circuit court did not follow the formalities of Rule 3A:8 when he
tendered his plea. Specifically, he argues: (1) that the circuit court did not arraign him under a
"properly amended indictment" and the plea was thus void and invalid and (2) that the circuit court
never accepted his proposed plea agreement leaving the parties free to renegotiate. Alternatively, he
argues that even if the conviction is not void for such errors, the conviction should be vacated "by
virtue of [Thomas] being denied his ability to withdraw any 'plea,' valid or otherwise, both prior to
adjudication of guilt and sentencing." For the following reasons, we disagree and affirm Thomas's
conviction.

---

[*] This opinion is not designated for publication. *See* Code § 17.1 413.

## I. BACKGROUND

"On appeal of criminal convictions, we view the facts in the light most favorable to the Commonwealth, and [we] draw all reasonable inferences from those facts." *Johnson v. Commonwealth*, 73 Va. App. 393, 396 (2021) (alteration in original) (quoting *Payne v. Commonwealth*, 65 Va. App. 194, 198 (2015)). So viewed, the facts are as follows.

### A. *The January 22, 2020 Hearing and the Original Plea Agreement*

On September 23, 2019, a grand jury indicted Thomas on one count of aggravated malicious wounding, in violation of Code § 18.2-51.2. On January 22, 2020, the morning trial was set to begin, the parties informed the circuit court that both parties had reached and endorsed a plea agreement. Upon questioning, Thomas informed the circuit court that it was a plea agreement with an agreed disposition. The circuit court indicated it would "take the plea," release the jury, and order a presentence report. It also explained that it would set a date to accept the plea and sentence because it did not yet know the terms of the plea agreement.

Thomas gave the circuit court a copy of the plea agreement and the Commonwealth's proffer of facts, and he explained that he would like to provide his own proffer. The Commonwealth clarified that the agreed disposition was only an agreement that Thomas would be sentenced within the sentencing guidelines, and the parties were free to argue within the guidelines. The parties also informed the circuit court that the plea agreement contemplated amending the original aggravated malicious wounding charge to unlawful wounding. Because it was not yet accepting the agreement, the circuit court explained that it would arraign Thomas on the original charge, aggravated malicious wounding, "[s]ince the amendment is part of the agreement we won't amend it just yet." The circuit court also noted for the record that no amendment to the indictment would be made unless and until the plea agreement was accepted. Neither party objected.

When the clerk asked Thomas how he pled to the aggravated malicious wounding, defense counsel intervened. The circuit court clarified:

> Mr. Thomas, you've been asked whether or not you plead guilty to the charge as indicted which is aggravated malicious wounding. Is it your understanding that you will be pleading guilty if the Court accepts an agreement? Because there's an agreed amendment and disposition in this case, it is your understanding is it not that you'll be pleading guilty to that amended charge and not the indicted charge?

Thomas responded, "Yes, sir. No contest." After further clarification, Thomas confirmed he intended to plead no contest to the amended charge of unlawful wounding.

The circuit court placed Thomas under oath and conducted a plea colloquy. Thomas affirmed that he had signed both the plea-of-guilty-to-a-felony form and the plea agreement. After the circuit court allowed Thomas to review the Commonwealth's proffer of facts with his attorney, Thomas confirmed that he understood the Commonwealth's evidence. He also indicated that he understood that by entering his plea he was waiving certain rights.

During the colloquy, the circuit court questioned Thomas, "Do you understand the charge against you which is currently aggravated malicious wounding, but this plea is in anticipation of an amendment to unlawful wounding?" It also asked if he understood the elements of both charges, and Thomas confirmed that he did. The circuit court then asked him if he was aware of the punishment range for both charges, noting that

> [f]or aggravated malicious wounding it's anywhere from 20 years to life in prison and a $100,000 fine. And for what could possibly be the amended charge of unlawful wounding is up to five years, one to five years or at the discretion of a judge or jury a fine of up to $2,500 and/or confinement for up to 12 months[.]

Thomas responded, "Yes, Your Honor." Thomas affirmed that he understood that the circuit court would be bound to the sentencing guidelines if the plea agreement was accepted.

- 3 -

With respect to the plea agreement, Thomas asserted that he understood that there was an agreement and that if the circuit court did not accept the plea agreement, he would have the right to withdraw his plea and have the case heard by a different judge. He confirmed that he had had enough time to discuss the case with his attorney, that it was his decision to enter the plea agreement, and that no one forced him to enter his plea. Thomas also confirmed that he understood he would be found guilty if the plea agreement was accepted. After the colloquy, the circuit court found that the plea had been made "knowingly and voluntarily with an understanding of the nature of the charge -- the two charges, in fact, and the consequences of [the] plea."

Additionally, the circuit court found the facts sufficient for a finding of guilt, but it withheld a finding of guilt because of the plea agreement and the need to amend the indictment if it accepted the agreement. The circuit court explained that "as far as procedurally I think it's maybe more efficient, because if the Court doesn't accept the plea then we don't have to go through the process of your client withdrawing the plea. . . . [P]rocedurally I think it would be a little bit easier to do it that way." Thomas agreed.

The circuit court then asked the Commonwealth to explain why it believed the proposed agreement was "in the best interests of the Commonwealth." The prosecutor explained that one eyewitness was hospitalized for health reasons and would be unable to come to court and a second eyewitness was on probation for misdemeanor crimes that could be considered crimes of moral turpitude. The victim, who was intoxicated during the incident, was unable to remember exactly what happened.

The circuit court ordered preparation of a presentence report and sentencing guidelines. It continued the case to April 20, 2020, for "status of the plea agreement and sentencing." On February 4, 2020, the circuit court entered an order, stating, "The Court, on the stipulation of a

plea to be entered, finds that the evidence would be sufficient for a finding of guilt, but the Court defers adjudication of guilt at this time to consider . . . whether or not to accept the Agreement of the Commonwealth."

B. *A Judge Designate and The Second Plea Agreement*

Due to the COVID-19 pandemic and the resulting Supreme Court of Virginia emergency orders, the circuit court continued the hearing for acceptance of the plea and sentencing until May 18, 2020. In the meantime, Thomas and the Commonwealth took it upon themselves to renegotiate the terms of the plea agreement while the matter remained under advisement.

On May 8, 2020, the parties returned to court. This time, however, the parties appeared before a different judge, a judge designate—who was not the judge that took the original plea agreement under advisement. Because Thomas was inadvertently not transported to the hearing, the case had to be continued. While discussing the date for the next hearing, Thomas's counsel informed the judge designate that the charge was going to be amended from a felony to a misdemeanor. Counsel also informed the circuit court that he wished to submit a motion to request bond pending sentencing and that he had an agreed order from the Commonwealth to grant bond. The Commonwealth confirmed that it did intend to amend the charge, which would remove the presumption against bond, and that it did not object to the circuit court granting bond.

The circuit court clarified that bond would last only from that date until May 13, 2020, the date chosen for the next hearing, at which time the charge would be "dropped to a misdemeanor" and Thomas would be sentenced. The parties agreed, and the judge designate set a $1,000 secured bond.

At that point, Thomas's counsel handed up both the motion to request bond pending sentencing and the agreed order. Neither party verbally informed the judge designate that the original plea agreement was under advisement with another judge. The bond motion, however, did

mention that an earlier plea agreement had been presented to the circuit court but never accepted. It also had a copy of the January 22, 2020 hearing transcript attached as an exhibit. The hearing concluded.

On May 13, 2020, the parties returned to court. They presented the judge designate with a new, fully endorsed plea agreement. On the Commonwealth's motion, the indictment was amended from aggravated malicious wounding to assault and battery in accordance with the terms of the new agreement. Per the new agreement, Thomas would plead nolo contendere to the amended charge, spend 12 months in jail, with credit for time served, pay full restitution, and remain on good behavior. The written plea agreement referenced the original plea agreement but did not recite the procedural history or posture of the agreement, and neither party orally referred to the earlier agreement. Thomas waived reading of the amended indictment and pled guilty to assault and battery. The judge designate accepted Thomas's plea, found him guilty, and sentenced him according to the terms of the new plea agreement.[1]

## C. *Vacating the Conviction*

On May 20, 2020, the judge who presided over the January 22, 2020 hearing, and took the original plea agreement under advisement, issued an order staying the judge designate's bond and sentencing orders. That same day, the judge entered a notice of hearing and ordered the parties to appear in court and show cause why the bond and sentencing orders should not be vacated.

On May 27, 2020, the parties appeared by telephone. The judge explained that the hearing came on the court's own motion "because it came to the Court's attention that these matters were heard when the Court believed they were under advisement by this Court." The circuit court first asked how the case had come to be on the docket when the Supreme Court of Virginia

---

[1] The sentencing order stated that the aggravated malicious wounding had been amended to unlawful wounding, but it cited the code section for assault and battery. Otherwise, the May 14, 2020 order reflected the terms of the second proposed plea agreement.

emergency orders, and the corresponding orders signed by the Chief Judge of the Circuit Court, prohibited in-person hearings due to the COVID-19 pandemic. Thomas's counsel explained that from his communications with the clerk's office, it was his understanding that the circuit court would hear any matters where there were agreements. Given the amended agreement in Thomas's case, he put the case on the docket.[2]

The circuit court then asked the parties what their understanding of the posture of the case was after the January 2020 hearing. Thomas's counsel explained that it was his position that a plea agreement was offered but never accepted. The circuit court asked what defense counsel thought "withholding adjudication to consider" meant. Counsel explained that it meant, "[c]ontemplation of whether or not to accept the plea agreement," but he reiterated that it also meant "the plea agreement was not, in fact, accepted." The circuit court asked, "Do you think not accepted also equates with rejected?" Defense counsel responded, "No, sir." But he argued that under contract principles, a contract, in this case the plea agreement, could be amended or rejected because it had not yet been accepted by the circuit court.

The circuit court focused on the fact that it had taken the matter under advisement, and it questioned whether counsel thought it would be okay to present a matter under advisement to a different judge before the first judge could rule. Thomas's counsel denied that this was the parties' intention, and he explained that the parties thought they were complying with the request of the circuit court to expedite cases that were agreed upon to alleviate the backlog caused by the pandemic. The circuit court pointed to the fact that neither Thomas nor the Commonwealth verbally disclosed the procedural posture of the case. The Commonwealth supported defense counsel, and it explained to the circuit court that it did not believe that defense counsel had

---

[2] After further discussion on this issue, the circuit court closed the discussion by stating that the Chief Judge of the Circuit Court sets the procedure for the court and judges and judge designates are required to follow that procedure.

attempted to circumvent the judge. It confirmed Thomas's explanation of how the case came on the docket, though it acknowledged that the parties contravened the Supreme Court emergency orders. The Commonwealth also agreed with defense counsel that it could renegotiate the plea agreement because the circuit court had not yet accepted it.

Ultimately, the circuit court found that the situation "reek[ed] of gamesmanship" and "it seem[ed] manipulative and deceptive." The circuit court was also concerned with the lack of candor to the judge designate about the original plea agreement being under advisement. The circuit court concluded that good cause existed to vacate the orders entered by the judge designate, including the sentencing order. Accordingly, the case and indictment were returned to the same posture as existed before the parties appeared before the judge designate.

Both the Commonwealth and Thomas filed objections to the ruling. The Commonwealth filed a motion to reconsider asking the circuit court to reconsider its finding that the parties lacked candor. Thomas filed a motion to reconsider asking the circuit court to reconsider its rulings and reinstate the judge designate's orders. The circuit court overruled the objections and denied both motions to reconsider. The circuit court continued the case to August 6, 2020, for consideration of the original plea agreement.

D. *Conviction on the Original Plea and the Motion to Withdraw the Plea*

On August 5, 2020, Thomas filed a "Motion to Set Aside Judgment of Conviction* and Withdraw Plea of Guilty.*" On August 6, 2020, the parties returned to court. Thomas asked the circuit court to hear his motion to set aside and withdraw his guilty plea. But the circuit court refused, stating that they were there for the circuit court to determine whether it would accept the plea tendered January 22, 2020, the original plea agreement, and the amendment that was part of that plea agreement. The circuit court stated that it had reviewed the facts and the presentence report, and it was accepting the plea agreement that was presented on January 22, 2020, and

- 8 -

amending the aggravated malicious wounding charge to unlawful wounding. It found Thomas guilty of unlawful wounding and asked the parties if they were prepared to go forward on sentencing.

Thomas renewed his motion to withdraw his guilty plea. He argued first that the circuit court had not accepted the plea agreement or adjudicated guilt until that day. The circuit court did not dispute that, but it reiterated that it took the plea agreement under advisement to consider whether it would accept the agreement. Next, Thomas argued that the facts had changed significantly and that the ends of justice would be served by permitting him to withdraw his plea. He explained that the Commonwealth had two main witnesses, and one had died and the other had new felony charges. The Commonwealth agreed and stated, "I don't think justice is being served at this point." It agreed that the circuit court had not accepted the plea agreement in January and, as a result, the parties were free to renegotiate the agreement. The circuit court reminded the parties that defense counsel had agreed with this procedure on January 22. After more argument, the circuit court stated, "I think we are just going in circles here." It moved on to the issue of the witnesses. Ultimately, it concluded that "that is not a sufficient ground to withdraw the plea," and it denied Thomas's motion to withdraw his plea. It continued the sentencing hearing to August 12, 2020, and it entered an order reflecting its decision on August 10, 2020.

Both Thomas and the Commonwealth filed objections. Thomas also filed a motion seeking to set aside the conviction, arguing that the guilty plea was void ab initio. The Commonwealth filed a supplemental brief, reiterating its position that the circuit court had not accepted the plea on January 22, 2020, and arguing that it did not have authority to vacate the judge designate's orders.

On November 9, 2020, the parties appeared before the circuit court for sentencing. Thomas renewed his prior motions, which the circuit court denied. Thomas also argued that he had never been arraigned on an amended indictment. The circuit court responded that Thomas had been

- 9 -

arraigned on January 22, 2020. Defense counsel responded, "Yes sir, he was." The circuit court also pointed out that it had conducted a plea colloquy contemplating the unlawful wounding charge. Defense counsel agreed, noting that he just wanted to make his position clear for the record. The circuit court denied the motions, and it imposed a sentence of five years in prison with all but 12 months suspended for a period of three years. Thomas now appeals.

## II. ANALYSIS

A. *The circuit court did not err in convicting Thomas under the original plea agreement.*

Thomas contends that the circuit court erred because it "failed to adhere to the formalities of Va. S. Ct. R. 3A:8(c)" on January 22, 2020, and consequently, "no valid plea was tendered, accepted[,] or adjudicated," which left the parties free to amend the plea agreement in accordance with contract principles. In support of his position, Thomas first argues that the circuit court never arraigned him under a properly amended indictment, rendering any plea attempt void and invalid. We find, however, that the doctrine of approbate and reprobate bars us from reaching this issue.

The approbate and reprobate doctrine prohibits a party from "taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). "The 'doctrine against approbation and reprobation' applies both to assertions of fact and law and precludes litigants from 'playing fast and loose' with the courts, or 'blowing hot and cold' depending on their perceived self-interests." *Id.* (internal citations omitted) (quoting *Babcock & Wilcox v. Areva*, 292 Va. 165, 204 (2016)).

At multiple points throughout the January 22, 2020 hearing, the circuit court explained the procedure it intended to follow and Thomas agreed to that procedure. After conducting a thorough plea colloquy, the circuit court explained that it was "thinking procedurally," and explained that it would "find the facts are sufficient for a finding of guilt, but I'm going to withhold that because

- 10 -

we're dealing with an amended indictment or potentially an amended indictment." Defense counsel agreed with this procedure. The circuit court also stated,

> And I think as far as procedurally I think it's maybe more efficient, because if the Court doesn't accept the plea then we don't have to go through the process of your client withdrawing the plea. Or we would but I think it would be -- procedurally I think it would be a little bit easier to do it that way.

Again, Thomas's counsel agreed, responding, "Absolutely, Your Honor."

The circuit court conducted a lengthy and thorough colloquy with Thomas. During the colloquy, Thomas affirmed he understood that he would plead no contest to the amended charge of unlawful wounding rather than the indicted charge of aggravated malicious wounding. He affirmed that he understood the plea agreement he signed and the waiver of his rights. He affirmed that it was his decision to enter the plea. The circuit court then took the plea agreement under advisement, pending preparation of a presentence report. Although this may not have been the ideal process, not only did Thomas not object to this procedure, he repeatedly agreed to the circuit court's use of this procedure. Furthermore, when the circuit court later noted that Thomas had been arraigned on January 22, 2020, defense counsel responded, "Yes sir, he was." Thus, Thomas, "having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position." *Clark v. Commonwealth*, 220 Va. 201, 214 (1979).

Thomas also argues that the circuit court never accepted the original plea agreement and the parties were therefore free to renegotiate the terms. His argument, however, does not account for the fact that the original agreement, though not accepted, had been presented to and taken under advisement by the circuit court—as the circuit court was permitted to do both by rule and its inherent authority. *See* Rule 3A:8 ("If the agreement is of the type specified in subdivision (c)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider a presentence report.");

- 11 -

*Moreau v. Fuller*, 276 Va. 127, 137 (2008) (finding it is within the inherent powers of a court to take matters under advisement). Even assuming Thomas is correct, and the parties can renegotiate a plea agreement that is not yet accepted, a party cannot simply ignore the fact that a circuit court, acting within its authority, has taken an issue under advisement and present that same issue to a different judge.

At a minimum, Thomas was required to either present the new plea agreement to the same trial judge that already had taken the agreement under advisement or otherwise inform the circuit court that he requested that the issue be withdrawn from the circuit court's consideration. Thomas did not do so. The parties simply presented a new plea agreement to a different judge without clearly informing that judge that a prior plea agreement was under consideration by another judge. We will not enable this type of gamesmanship and allow parties to ignore courts acting within their lawful authority. *Hernandez v. Commonwealth*, 281 Va. 222, 226 (2011) (noting a circuit court has the inherent authority to take the matter under advisement or continue the case to a later date); *Pritchett v. Commonwealth*, 61 Va. App. 777, 788 (2013) (explaining that the purpose of allowing a party to withdraw a plea is not "to enable gamesmanship or mere regret").

B. *The circuit court did not err by denying the motion to withdraw the plea agreement.*

Alternatively, Thomas argues that even if his felony conviction is not void based on the procedural errors, it should be vacated because the circuit court erred by refusing to allow him to withdraw his plea prior to adjudication of guilt and sentencing "pursuant to the manifest injustice standard." We disagree.

On appeal, we review a circuit "court's decision to deny a motion to withdraw a plea of guilty or *nolo contendere* under an abuse of discretion standard." *Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017). "Whether the trial court abused its discretion 'is to be determined by

- 12 -

the facts and circumstances of each case.'" *Hernandez v. Commonwealth*, 67 Va. App. 67, 77 (2016) (quoting *Hoverter v. Commonwealth*, 23 Va. App. 454, 464 (1996)). The circuit court's ruling will be reversed "only upon 'clear evidence that [the decision] was not judicially sound.'" *Spencer*, 68 Va. App. at 186 (alteration in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)).

Thomas first argues that he had the "unilateral ability" to withdraw his guilty plea because the circuit court had not yet accepted his plea. His argument suggests that he can, without further action, decide to withdraw from the plea until such time as the circuit court accepts it. But as previously noted, Thomas does not account for the fact that the circuit court took the plea agreement under advisement. Unlike the federal rule, which expressly allows a defendant to withdraw a plea of guilty or nolo contendere "before the court accepts the plea, for any reason or no reason," Fed. R. Crim. P. 11(d)(1), Virginia law does not contain a similar provision. And we do not need to decide whether such a right or ability exists in Virginia because Thomas did not seek to withdraw his plea at that point. Instead, Thomas presented a new plea agreement to a different judge without clearly informing him that a prior plea agreement was under consideration by another judge. By the time Thomas sought to withdraw his plea, the original trial judge had already found that the situation "reek[ed] of gamesmanship" and the parties lacked candor when appearing before the judge designate.

Thomas next argues that the circuit court erred by refusing to allow him to withdraw his plea because it was in the interests of justice based on the facts and circumstances in this case. Code § 19.2-296 provides:

> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

- 13 -

In a presentencing motion to withdraw a plea, a defendant must establish two things: (1) "a good-faith basis for making the guilty plea and later seeking to withdraw it," and (2) "a reasonable basis for contesting guilt." *Hernandez*, 67 Va. App. at 75 (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)). "The first requirement protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court. The second requirement defeats motions to withdraw which would result in an essentially futile trial." *Id.* (quoting *Cobbins*, 53 Va. App. at 34). The object of this standard "is to allow a defendant to withdraw his guilty plea in situations where the defendant would not have pled guilty but for some external circumstance such as coercion, or poor or erroneous advice from counsel." *Pritchett*, 61 Va. App. at 788. But the Supreme Court did not "set about to enable gamesmanship or mere regret." *Id.*

Here, Thomas entered the original plea agreement and affirmed that it was his intention to plead no contest to the amended charge of unlawful wounding. The circuit court concluded that he entered that plea knowingly, intelligently, and voluntarily, and Thomas does not suggest that there was any fraud, coercion, or undue influence that caused him to enter the original plea. *See Hernandez*, 67 Va. App. at 76 (stating that leave should be given if there is a mistake or misconception of the charge, fraud, misrepresentation, or was made involuntarily). Essentially, Thomas's only challenge to the original plea agreement is that he was later able to negotiate a better deal.[3]

---

[3] Thomas argued below that the situation changed because one witness died and was now unavailable and a second witness had credibility issues because of new criminal charges. But issues with these same witnesses were known to Thomas at the time of the original plea on January 22, 2020. During the January 22, 2020 hearing, the Commonwealth indicated that it had reached the original plea agreement because of the ill health and unavailability of the first witness and the credibility issues of the second witness, who already had multiple charges and convictions for crimes of moral turpitude.

Additionally, Thomas did not make any attempt to withdraw his original plea before presenting a new plea agreement to a different judge. The original trial judge specifically found that the decision to present a new plea agreement to a different judge and the lack of candor in informing that new judge that there was already a plea agreement under advisement was the exact type of gamesmanship that the good faith prong aims to prevent. Despite Thomas's argument that his written filings fully explained the procedural posture of the case, neither filing mentions that the first circuit court judge took the original plea agreement under advisement pending preparation of a presentence report. Instead, both filings mention only that the plea agreement was proffered and that it had not been accepted. Based on the facts and circumstances of this case, the circuit court did not err in finding there was not a genuine good faith basis to withdraw the original plea.

### III. CONCLUSION

For the foregoing reasons, the decision of the circuit court is affirmed.

*Affirmed.*