Present:  All the Justices

JEFFREY WAYNE ROWE

v.  Record No. 081173      OPINION BY JUSTICE DONALD W. LEMONS
                                    April 17, 2009
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA


    In this appeal, we consider whether the Court of Appeals

erred in affirming the conviction of Jeffrey Wayne Rowe

("Rowe") for the crime of assault and battery[1] of a law

enforcement officer.

            I.  Facts and Proceedings Below

    Officer Brian J. Fair ("Officer Fair") of the Virginia

Beach Police Department was driving on Interstate 64 from work

to his home in Chesapeake at approximately 1:30 a.m. on July

9, 2005.  Although he was driving his personal vehicle,

Officer Fair was in uniform.  His uniform was dark blue, "with

a patch on both shoulders, [and] the badge clearly displayed

above his left breast pocket."  During his commute home,

Officer Fair noticed a truck being driven in a very erratic

---

[1]  From the bench, the trial court found Rowe guilty of
"assaulting a police officer in the exercise of his duties."
In its sentencing order, the trial court found Rowe guilty of
"A&B of Police Officer."  Code § 18.2-57(C) makes it a Class 6
felony to commit "an assault or an assault and battery against
another knowing or having reason to know that such other
person is a . . . law-enforcement officer."  The distinction
between the trial court's language from the bench and in the
sentencing order is not germane to any contested issue on
appeal, but does account for periodic use of both terms by the
trial court and counsel.

manner, "cutting across" multiple lanes and at one point spinning out of control. Officer Fair contacted the Virginia Beach Police dispatcher and stated that he believed he was encountering a drunk driver and requested that the Virginia State Police be notified. The driver was later identified as Rowe.

Officer Fair was informed that no State police officers were available to assist, so he continued to follow Rowe at a distance. Officer Fair followed Rowe, who continued to drive erratically, for some time, losing and regaining contact with Rowe at least twice. At one point, Rowe left the highway and stopped his truck, and Officer Fair, seeing that Rowe's driver's-side window was open, exited his vehicle and shouted that he was a police officer. Rowe drove away again and Officer Fair resumed pursuit; he later observed Rowe losing control of his truck and driving on the wrong side of the roadway.

Eventually, Officer Fair saw Rowe drive his truck into a "ravine" between the northbound and southbound lanes of the interstate. Officer Fair informed the dispatcher that he believed Rowe had "wrecked bad and the vehicle had possibly flipped." Officer Fair did not follow Rowe into the ravine, but instead drove to the guardrail overlooking the ravine, approximately 25 feet above Rowe's position. Although the

interstate was illuminated, lighting in the ravine area was "very faint." Officer Fair observed Rowe's truck, stopped but with its headlights still on, facing the embankment where Officer Fair was positioned. He heard the gears of Rowe's truck grinding, and surmised that Rowe was trying to put the vehicle back into gear.

Hoping to prevent Rowe from driving away, Officer Fair exited his vehicle, drew his service weapon, identified himself as a police officer, and ordered Rowe to shut off the engine. Rowe's driver's-side window was open. Officer Fair saw Rowe bend down as if to look under the sun visor up the hill, and Rowe turned the engine off. With his firearm at the "low ready position," Officer Fair commanded Rowe to put his hands in plain view. Rowe complied, extending his hands out his window, and Officer Fair continued to walk carefully down the embankment toward Rowe's truck. When he reached the bottom of the embankment, he was approximately 10 yards in front of Rowe's truck, and was standing directly in his headlights for several seconds. Officer Fair then ordered Rowe to get out of the truck and lie "facedown" on the grass.

Almost immediately, Rowe pulled his hands into his truck, put the truck in drive, and accelerated rapidly, spinning the wheels on the wet grass in the ravine. Officer Fair was moving toward his right, away from the entrance to the ravine,

3

which was also the only exit.  As Rowe moved forward, Officer Fair was shouting at him to stop, and threatening to shoot if he did not do so.  Rowe turned his truck toward Officer Fair, away from the exit to the ravine, as he accelerated, and Officer Fair responded by firing several shots at the front of the truck.  Officer Fair believed he had hit the engine because steam began to escape from the front, and the truck stopped between 5 and 10 feet from Officer Fair.

However, the truck was not disabled, and Rowe began spinning his tires in reverse.  Officer Fair tried to return to his vehicle, which was his "safety point," but fell on the wet grass.  When he looked up, Rowe was again driving directly at him, and he was fully illuminated by Rowe's headlights.  Officer Fair fired several more shots at the truck, but stopped when he saw Rowe turn away from him.  At that point, Rowe drove out of the ravine and left the area.  Officer Fair called the dispatcher and returned to his vehicle, where he was joined by Chesapeake and State police.  Chesapeake police officers apprehended Rowe several hours later.  When they did, Rowe was disheveled and smelled of alcohol, but made several spontaneous statements that he had "heard someone come up to me and say he was a police officer" and asked whether the arresting officer "was the police officer that shot at him."

4

Rowe was indicted for attempted capital murder of a law enforcement officer, and was found guilty of that offense in a bench trial.  Subsequently, he filed a motion to reconsider, which the trial court granted.  After accepting memoranda of law from both parties and viewing the scene of the encounter between Officer Fair and Rowe at the ravine, the trial court held a hearing on the motion to reconsider, at which a Law Enforcement Mutual Aid Agreement ("the Agreement") signed in 2003 by Chesapeake, Virginia Beach, and other municipalities was received as evidence.  The Agreement purported to give officers of each signatory jurisdiction "authority to enforce the laws of the Commonwealth of Virginia and to perform the other duties of a law enforcement officer" when present in any other signatory jurisdiction "in such instances wherein an apparent, immediate threat to public safety precludes the option of deferring action to the local law enforcement agency."  At the conclusion of the hearing, the trial court vacated its finding of guilt on the charge of attempted capital murder of a law enforcement officer, and instead convicted Rowe of the Class 6 felony of assault and battery of a police officer pursuant to Code § 18.2-57(C).

The Court of Appeals granted an appeal on only one of the two arguments Rowe asserted.  The Court held that Rowe had waived his argument that the assault and battery charge was

not a lesser included offense of the attempted capital murder charge, and therefore denied his petition as to that question. Rowe v. Commonwealth, Record No. 3196-06-1 (Aug. 14, 2007). According to the Court of Appeals, Rowe violated Rule 5A:18, which limits questions on appeal to those raised in the trial court and incorporates the requirements of other rules, including Rule 5A:20, to delineate what arguments are preserved. Id., slip op. at 2-3. The Court of Appeals twice required Rowe to amend his Petition for Appeal so that it complied with the requirements of Rule 5A:20(c). This rule requires that petitions for appeal include "[a] statement of the questions presented with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court." Rule 5A:20(c). The Court of Appeals held that because the pages referenced by Rowe did not show he preserved the lesser-included-offense argument, Rowe "never raised this issue at trial," and therefore it denied Rowe's appeal of that question. Rowe v. Commonwealth, Record No. 3196-06-1, slip op. at 3 (May 20, 2008).

As to the sufficiency of the evidence to support Rowe's assault and battery conviction, the Court of Appeals affirmed the judgment of the trial court by unpublished opinion, concluding that the Agreement "gave Officer Fair authority to

engage in the public duties of a police officer in the City of Chesapeake," even though he was a Virginia Beach police officer. Id., slip op. at 3. Accordingly, the Court of Appeals held that under the circumstances of the encounter with Rowe, Officer Fair was "engaged in the performance of his public duties" within the meaning of Code § 18.2-57(C). Id., slip op. at 4.

We awarded Rowe an appeal on the following assignments of error:

1. The Court of Appeals erred when it found Petitioner had waived the issue of whether assault of a law enforcement officer under Va. Code § 18.2-57 is a lesser-included offense to the charge of attempted capital murder of a police officer under Va. Code § 18.2-31.

2. The Court of Appeals erred when it affirmed the trial court's finding that the evidence was sufficient to convict Petitioner of assault of a police officer in violation of Va. Code § 18.2-57(C).

## II. Analysis

A. Assault and Battery as a Lesser Included Offense

Rowe first contends that assault and battery of a law enforcement officer under Code § 18.2-57(C) is not a lesser included offense of attempted capital murder of a law enforcement officer under Code § 18.2-31(6), and that because he was never indicted for the assault and battery charge, his conviction must be reversed. The Court of Appeals did not reach the merits of this argument, holding instead that Rowe

7

had waived it by failing to comply with the rules governing appeals to the Court of Appeals.  It is not necessary to specifically address the question of Rowe's compliance with Rules 5A:20(c) and 5A:18 because Rowe invited the very error of which he now complains.  His approbation and reprobation is necessarily fatal to his lesser-included-offense argument.

We have previously made clear that "[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.  Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong."  Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006).  Cangiano had conceded at trial that language in a purchase agreement was contractual in nature, but then argued on appeal that the trial court erred when it held that he was contractually bound by it.  271 Va. at 180-81, 623 S.E.2d at 895.  And in Powell v. Commonwealth, 267 Va. 107, 590 S.E.2d 537 (2004), we held that a defendant could not complain on appeal of the trial court's decision not to disqualify jurors due to bias, when the potential bias complained of arose from questions asked by the defendant's attorney during voir dire.  Id. at 144, 590 S.E.2d at 560.

Here, the error asserted by Rowe is even more obviously the result of his own strategy and actions at trial.  At

trial, Rowe advanced the assault charge – the charge of which he was never indicted but eventually convicted – as a more lenient alternative to the attempted murder charge he was then facing and maintained that it was a lesser included offense.

On numerous occasions during trial, counsel for Rowe sought to rebut the attempted-capital-murder charge, asserting that Rowe lacked the requisite specific intent for that crime. Counsel for Rowe described for the trial court the possible consequences if it agreed with these arguments, asserting that "the Court clearly has options" for imposing reduced penalties based on lesser included offenses.  In support of his argument, Rowe cited and repeatedly referenced a Court of Appeals opinion, Wynn v. Commonwealth, 5 Va. App. 283, 362 S.E.2d 193 (1987), which he claimed supported his position that assault and battery of a law enforcement officer is a lesser included offense of attempted capital murder of a law enforcement officer.

The clearest example of this occurred on the final day of the original trial, when counsel for Rowe, in response to a specific request from the trial court, stated his belief that "felony assault and battery of a law enforcement officer . . . would be the lesser-included offense" for attempted capital murder.  The record of the proceedings demonstrates that Rowe acquiesced without objection when the trial court accepted his

9

theory.  Rowe cannot now complain of the trial court's adoption of the legal theory he introduced and repeatedly urged the trial court to adopt.  Because we hold that Rowe may not approbate and reprobate by inviting error and then seeking reversal of his conviction based upon it, it is not necessary to address Rowe's claim that the Court of Appeals erred in its application of Rules 5A:18 and 5A:20(c).

Nonetheless, Rowe argues that the Court of Appeals erred in failing to apply the "ends of justice" exception of Rule 5A:18 to reach the argument.  We have held that "[a]pplication of the ends of justice exception is appropriate when the judgment of the trial court was error and application of the exception is necessary to avoid a grave injustice or the denial of essential rights."  Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005). Because Rowe invited the error of which he complained before the Court of Appeals, the Court of Appeals' refusal to consider this argument under the "ends of justice" exception did not sanction a "a grave injustice or the denial of essential rights," and was therefore correct.

B.    Sufficiency of the Evidence

Rowe next argues that even if we reject his lesser-included-offense argument, the evidence presented at trial was insufficient to support his conviction for assault and battery

10

of a law enforcement officer.  This argument is reviewed under established principles of appellate review.

> When analyzing a challenge to the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prevailing party at trial and considers any reasonable inferences from the facts proved. The judgment of the trial court will only be reversed upon a showing that it "is plainly wrong or without evidence to support it."

Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006) (quoting Code § 8.01-680) (citation omitted).

Rowe was convicted under Code § 18.2-57(C), a subsection of Virginia's statute criminalizing assault and battery. Under this subsection,

> if any person commits an assault . . . against another knowing or having reason to know that such other person is . . . a law-enforcement officer . . . engaged in the performance of his public duties, such person is guilty of a Class 6 felony . . . ."

Rowe's essential arguments on appeal are as follows:  Rowe asserts that the Commonwealth failed to prove at trial that Officer Fair was "engaged in the performance of his public duties" such that § 18.2-57(C) applies.  Consequently, Rowe contends, Officer Fair only had authority to make a citizen's arrest.

At trial and on appeal, Rowe has maintained that the Agreement has no relevance to this issue.  At trial, following the grant of his motion to reconsider, Rowe challenged the

11

admissibility of the Agreement on grounds of relevance. Rowe claimed that Code § 19.2-250(A) confines the arrest authority of police "to the officer's own city or within one mile of that city's corporate limits," and that "nothing in the Virginia Code authorizes individual municipalities to grant law enforcement officers greater powers than ordinary citizens when those officers are outside their territorial boundaries." Based on these assertions, Rowe objected to the admissibility of the Agreement as "immaterial and irrelevant." Rowe makes the same arguments here, asserting that because the encounter between Officer Fair and Rowe took place entirely outside of the City of Virginia Beach or the statutory extension of one mile, the Commonwealth failed to prove that Officer Fair was engaged in the performance of his duties, as required to support Rowe's conviction.

We hold that the evidence is sufficient to support Rowe's conviction for assault of a law-enforcement officer. Although Code § 19.2-250 does limit the geographic boundaries of localities to one mile beyond their respective corporate limits, as Rowe contends, the Agreement, signed by both Virginia Beach (which employed Officer Fair) and Chesapeake (where the encounter took place), gives officers from one jurisdiction "authority to enforce the laws of the Commonwealth of Virginia and to perform the other duties of a

12

law enforcement officer" when present in any other signatory jurisdiction "in such instances wherein an apparent, immediate threat to public safety precludes the option of deferring action to the local law enforcement agency."

Rowe asserted at trial and on appeal that nothing in the Virginia Code authorized the provisions of the Agreement. However, Code § 15.2-1726 provides in relevant part that

> [a]ny locality may, in its discretion, enter into a reciprocal agreement with any other locality . . . for such periods and under such conditions as the contracting parties deem advisable, for cooperation in the furnishing of police services. . . . Subject to the conditions of the agreement, all police officers, officers, agents and other employees of such consolidated or cooperating police departments shall have the same powers, rights, benefits, privileges and immunities in every jurisdiction subscribing to such agreement, including the authority to make arrests in every such jurisdiction subscribing to the agreement.

Rowe does not challenge the validity of this statute, which authorizes the Agreement. Whether this statutory provision violates the Dillon Rule[2] and consequently is invalid was not raised by Rowe at trial or on appeal. Accordingly, we express no opinion as to this issue.

---

[2] "Dillon's Rule provides that municipal corporations have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable." Board of Zoning Appeals v. Board of Supervisors, 276 Va. 550, 553-54, 666 S.E.2d 315, 317 (2008).

13

When he encountered Rowe, who was driving recklessly and dangerously on a public highway, Officer Fair was faced with "an apparent, immediate threat to public safety." He reported the situation in an effort to have Chesapeake officers or State police officers handle the matter, but was informed that they were unavailable to do so. This is precisely the sort of situation envisioned by the Agreement. The Agreement was introduced as evidence before the trial court. The statute that authorized it was not challenged. The evidence presented was sufficient to hold that Officer Fair was "engaged in the performance of his public duties" at all relevant times during his encounter with Rowe.

### III. Conclusion

For the reasons stated, we hold that the Court of Appeals did not err in affirming Rowe's conviction for assault and battery of a law enforcement officer. Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.

JUSTICE KOONTZ, with whom CHIEF JUSTICE HASSELL and JUSTICE KEENAN join, dissenting.

I respectfully dissent. In my view, the majority's application of the "invited error" doctrine in this case sweeps too broadly and thereby implicitly permits defense counsel to confer upon the trial court authority to convict

14

Jeffrey Wayne Rowe of an offense which is not, as a matter of law, a lesser-included offense of the statutory crime for which he was indicted.

Rowe was indicted for attempted capital murder of a law enforcement officer in violation of Code § 18.2-31(6). Following a lengthy bench trial, Rowe was found not guilty of that charge. While the indictment was not amended, Rowe was found guilty of felony assault and battery of a law enforcement officer in violation of Code § 18.2-57(C). The Commonwealth has previously conceded in another case that, as a matter of law, a violation of Code § 18.2-57(C) is not a lesser-included offense under Code § 18.2-31(6) because the two statutes contain different definitions of the term "law enforcement officer." See Edwards v. Commonwealth, 41 Va. App. 752, 759, 589 S.E.2d 444, 447 (2003) (en banc). Moreover, during oral argument in the present case, the Commonwealth properly adhered to its prior concession. See also Coleman v. Commonwealth, 261 Va. 196, 201, 539 S.E.2d 732, 735 (2001) ("[s]ince assault and battery requires proof of a battery, it is not a lesser-included offense of attempted murder").

Basic principles frame my disagreement with the majority's application of invited error under the circumstances of this case. An indictment is a written

15

accusation of a crime issued by a legally impaneled grand jury. Code § 19.2-216. And "no person shall be put upon trial for any felony, unless an indictment . . . shall have first been [issued] by a grand jury . . . or unless such person" waives the indictment and then may be tried on a warrant or information. Code § 19.2-217. In this context, we have recognized that the Due Process Clauses of both the Fourteenth Amendment of the Constitution of the United States and Article 1, Section 8 of the Constitution of Virginia require that an accused be given proper notification of the criminal charges against him. Thus, we have stated that "an accused cannot be convicted of a crime that has not been charged, unless the crime is a lesser-included offense of the crime charged [in the indictment]." Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000).

Of course, there is a permissible procedure by which the indictment can be amended to conform to the evidence under Code § 19.2-231, and it is well-established that the accused can waive an objection to the amendment of the indictment. Ortiz v. Commonwealth, 276 Va. 705, 722, 667 S.E.2d 751, 761 (2008). Similarly, a criminal defendant charged with a felony offense may plead guilty to a different, reduced charge as part of a plea agreement. See Palmer v. Commonwealth, 269 Va. 203, 207, 609 S.E.2d 308, 310 (2005).

In the present case, the Commonwealth did not seek to amend the indictment which charged Rowe with attempted capital murder of a law enforcement officer, nor does the record show that the assertions of Rowe's defense counsel constituted an offer to have Rowe plead guilty to a different, reduced charge. In contrast, the record is replete with numerous discussions between the trial court and defense counsel concerning whether a finding of not guilty of the attempted murder charge necessarily would require a dismissal of the case or whether the evidence would support a finding of guilt for a lesser-included offense. Clearly, the trial court was fully aware of the limitations of its authority in that regard as we explained in Dalton.

Under those circumstances, any seasoned defense attorney can be expected to employ a trial strategy designed to obtain, in the absence of a dismissal, a conviction of a lesser-included offense and a corresponding lesser punishment than might have been imposed for the offense charged in the indictment. Here, Rowe's counsel unquestionably employed such a trial strategy in asserting that assault and battery of a law enforcement officer is a lesser-included offense of the crime of attempted capital murder of a law enforcement officer. While this assertion was erroneous as a matter of law, the record is clear that defense counsel relied upon Wynn

17

v. Commonwealth, 5 Va. App. 283, 362 S.E.2d 193 (1987), to support that assertion. Defense counsel may have made the assertion in good faith, but he was simply wrong. Nevertheless, the trial court was also in error in adopting the erroneous assertion because the trial court had no authority to convict Rowe of a crime that was not a lesser-included offense of the crime charged in the indictment and upon which Rowe was on trial.

Certainly, the "invited error" doctrine can and should, in an appropriate case, be employed to bar a criminal defendant from "approbating and reprobating" by seeking to challenge on appeal an action of the trial court brought about through his counsel's own purposeful conduct. See, e.g., Powell v. Commonwealth, 267 Va. 107, 143-44, 590 S.E.2d 537, 559-60 (2004) (no error in trial court's failure to strike for cause jurors made aware of defendant's prior conviction through strategic decision of defense counsel to raise the issue during voir dire); Moore v. Hinkle, 259 Va. 479, 491, 527 S.E.2d 419, 426 (2000) (defendant could not claim prejudice arising from his decision not to wear available street clothes and instead to appear before the jury in jail clothing). The essence of invited error is the concept of waiver. Conferring authority upon the trial court that is not authorized by statute and, indeed is prohibited, applies the

18

concept of waiver too broadly.  The majority's decision today will devolve upon a trial court the ability to determine not merely the guilt of an accused but also the crime for which he may be convicted though never charged, simply because a defense counsel has made an erroneous statement of law.

For these reasons, I am of opinion that the Court of Appeals erred in failing to apply the "ends of justice" exception of Rule 5A:18 and grant Rowe's petition in order to reach the merits of the issue as Rowe argues in support of his first assignment of error in this appeal.  The judgment of the trial court was plainly wrong because it had no authority to convict Rowe of a crime that is not, as a matter of law, a lesser-included offense of the crime for which he was charged in the indictment and the indictment was never amended.  Accordingly, I would invoke the ends of justice exception of our Rule 5:25 and reverse the judgment of the Court of Appeals under the first assignment of error in this appeal and reverse Rowe's conviction for a violation of Code § 18.2-57(C) as having been rendered by the trial court without authority to do so.