PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

                                                        OPINION BY
v. Record No. 230343                          JUSTICE STEPHEN R. McCULLOUGH
                                                         April 4, 2024
MARCUS CLEOPHUS HOLMAN


FROM THE COURT OF APPEALS OF VIRGINIA


        The Commonwealth appeals from a decision of the Court of Appeals of Virginia

reversing Marcus Cleophus Holman's conviction for use of a firearm in the commission of a

felony. The Court of Appeals held that although Holman had not preserved his challenge to this

conviction, the "ends of justice" exception to Rule 5A:18 applied, and, additionally, the

approbate and reprobate doctrine did not apply. At trial, Holman consistently staked out the

position that he was not challenging the charge of use of a firearm in the commission of a felony.

Counsel stated that Holman was changing his plea to a guilty plea regarding the offense of

unlawful wounding, and expressly agreed with the circuit court's statement that Holman had

"stipulated to" the other charges he was facing, including discharging a firearm in a public place

and possession of a firearm after having been convicted of a felony. The statements of Holman's

attorney were part of a deliberate and well-crafted trial strategy designed to forestall a conviction

for the charge of aggravated malicious wounding. Based on these statements, the circuit court

afforded the defendant the relief he desired, by granting his motion to strike the aggravated

malicious wounding charge he had been facing and accepting his plea of guilty to use of a

firearm in the commission of a felony. Having approbated to the charge of use of a firearm in

the commission of a felony, Holman now seeks to reprobate by challenging the sufficiency of the

evidence for that charge. The approbate and reprobate doctrine forecloses precisely this kind of

conduct.  Moreover, under settled law, the approbate and reprobate doctrine precludes resort to the ends of justice exception.  Therefore, we reverse the judgment of the Court of Appeals.

BACKGROUND

I.     FOLLOWING AN ARGUMENT, HOLMAN SHOOTS HIS LONGTIME GIRLFRIEND IN THE FACE WITH A SHOTGUN.

The defendant, Marcus Holman, and the victim, Selena Spurlock, were romantically involved "off and on" for about 16 years, and they had a child together.  At the time of the relevant event, they lived together at a house in King William County.

On the morning of November 14, 2020, Holman told Spurlock he was going hunting.  The two communicated by telephone throughout the day.  According to Spurlock, when she asked him at what time he was coming home, Holman erupted angrily and began yelling and screaming.  Spurlock, perceiving that Holman was intoxicated, decided to go find Holman at his mother's house to retrieve her license plates.  She explained that the plates did not belong on the vehicle that Holman was driving, and she was worried about him driving while intoxicated with plates that belonged to her.  Holman testified that he did not have a driver's license, and, therefore, could not obtain license plates.

When Spurlock arrived that evening, she told Holman that she was going to retrieve the license plates as well as a phone that belonged to her.  According to Spurlock, Holman became angry, yelled at her and struck her in the face with a license plate.  She responded by walking up to him and hitting him in the back of the head hard enough to knock him to the ground.  She retrieved one of the license plates and returned to her home, around 9:00 p.m.

Several hours later, Holman returned to the couple's home.  Spurlock, believing that Holman was drunk, had locked both door locks.  This had the effect of locking Holman out of the house because he only had a key for one of the locks.  Spurlock contacted Holman's sister,

2

asking her to pick him up. Spurlock told Holman that she was not going to let him in the house. Holman's sister arrived approximately 20 minutes after Spurlock contacted her.

Holman and his sister, along with his sister's boyfriend, argued loudly for a time. Spurlock went to a bathroom on the second floor of the home and partially opened a window to see and hear what was happening. Spurlock yelled from inside the house that she was not letting Holman in and that she was going to call the police. Holman had previously been convicted of a felony and, consequently, he was prohibited from possessing a firearm. According to Spurlock, Holman told her to "come outside. You wanna hide behind the window, come outside." He then "pointed" his shotgun "at the window" where she stood, and "[h]is sister tried to take it away from him." Spurlock called down from the bathroom window, "I know you didn't just point that gun at me."

According to Spurlock, Holman pointed the gun at the window and said that he and his shotgun were "going down tonight." Holman also said that if the sheriff's deputies arrived, there would be "a lot of brown suits laid out." Holman refused his sister's entreaties to leave and told her he was "not going anywhere." Holman's sister and her boyfriend gave up, returned to her car, and left. An illuminated porch light provided the only light at the house.

Spurlock, who was "standing directly in front of the window," called the police non-emergency number, hoping to prod Holman to leave. Although no lights were turned on in the bathroom where Spurlock was standing, her phone screen lit up as she spoke with the police operator. Spurlock had placed her phone on speaker, so Holman could hear her talk to the police. Spurlock told the police operator that her boyfriend was refusing to leave and she did not want him there.

As Spurlock was talking to the police, Holman fired the shotgun, hitting her in the face. She wrapped a towel on her face and was later transported by ambulance to a hospital. She was eventually taken by medevac to a different hospital. Spurlock spent two weeks in the hospital, including one week in the intensive care unit. She suffered a "broken nose, shattered sinuses, pellets in the fingers," and she permanently lost vision in both eyes." Holman left the scene without checking on her.

Holman presented evidence that contested certain aspects of Spurlock's account. For example, he denied that he struck Spurlock in the face with the license plate, denied that he was drunk or angry at her, and he denied stating that he would kill police officers. Holman repeatedly and adamantly denied that he deliberately shot Spurlock. He admitted that he shot the gun in the air twice, but testified that in doing so he was not aiming at the house. He claimed that he had fired the gun in the air out of frustration and humiliation.

II.    HOLMAN IS CONVICTED OF THE LESSER INCLUDED OFFENSE OF UNLAWFUL
       WOUNDING IN A BENCH TRIAL, ALONG WITH ASSOCIATED FIREARM CHARGES.

Holman was charged with aggravated malicious wounding under Code § 18.2-51.2, use of a firearm in the commission of a felony under Code § 18.2-53.1, discharging a firearm in a public place resulting in bodily injury under Code § 18.2-280, and possession of a firearm by a person convicted of a felony in violation of Code § 18.2-308.2.

Faced with an aggravated malicious wounding charge that carries a possible life sentence, *see* Code § 18.2-51.2 (designating aggravated malicious wounding as a Class 2 felony), Code § 18.2-10(b) (Class 2 felonies can carry a punishment of up to life in prison), along with a devastating injury to the victim, defense counsel pursued a mitigation strategy. Counsel acknowledged in opening statements that he was not challenging Holman's possession of a firearm as a person convicted of a felony, or the fact that he discharged the firearm. The only

4

evidence he would contest, counsel clarified, was "whether or not the necessary malice was present in order for him to be convicted of aggravated malicious wounding." Counsel argued that Holman did not act maliciously, that "[i]t was an accident, plain and simple," and that Holman regretted his actions. Counsel stated that Holman "does not want to walk away free of charge. He doesn't. He understands he has to be punished. He expects the Court to punish him appropriately."

At the close of the Commonwealth's case, counsel for Holman made a motion to strike, arguing that the Commonwealth had failed to prove malice. "At best," counsel argued, the Commonwealth's evidence had "establish[ed] an unlawful wounding." Counsel again stated that he was not challenging the fact that Holman had discharged the firearm, or that Spurlock had suffered permanent injuries from that act. Counsel stated that he was "not arguing about the fact that [Holman] had a firearm. I'm not arguing about the use of a firearm. I'm not arguing about any other thing, but the specific intent of the malicious wounding." The circuit court denied the motion.

After presenting evidence for the defense, defense counsel renewed his motion to strike. Counsel explained that the defense had "stipulated to the vast majority of the evidence," but not to the existence of malice. The circuit court stated that it would grant the motion to strike the aggravated malicious wounding charge, but that it would proceed on the unlawful wounding charge. Defense counsel then immediately stated that the defendant was changing his plea to guilty on the unlawful wounding charge. The circuit court stated that the defendant had "stipulated to the other charges" even though he had entered a plea of not guilty. Defense counsel responded "[y]es, sir." The circuit court, without conducting a plea colloquy, then found Holman guilty of unlawful wounding, use of a firearm in the commission of a felony,

5

discharging a firearm in a public place, and possession of a firearm after having been convicted of a felony.

The statute setting forth the crime of use of a firearm in the commission of a felony specifically delineates the felonies to which the statute applies. Code § 18.2-53.1. Among others, the statute applies to aggravated malicious wounding and malicious wounding, but not to unlawful wounding. *Id.* Therefore, the circuit court convicted Holman of use of a firearm in the commission of a felony, without convicting Holman of one of the listed predicate felonies. *See Akers v. Commonwealth*, 31 Va. App. 521 (2000).

The circuit court sentenced Holman to serve a total of fifteen years: five years for unlawful wounding, three years for use of a firearm in the commission of a felony, five years for discharge of a firearm in a public place, and two years for possession of a firearm by a person convicted of a felony. The court suspended five years of the sentences, for an active sentence of 10 years.

At Holman's sentencing hearing, defense counsel stated that Holman had "pled guilty on all of the other charges." Counsel further stated that Holman accepted the mandatory minimum for "ple[ading] guilty" to the use-of-a-firearm charge.

Several days after the entry of his sentencing order, Holman filed a pro se motion to reconsider, arguing that he could not be convicted of discharge of a firearm during the commission of unlawful wounding. The circuit court did not rule on the motion.

### III.    THE COURT OF APPEALS REVERSES HOLMAN'S CONVICTION FOR USE OF A FIREARM IN THE COMMISSION OF A FELONY.

A panel of the Court of Appeals affirmed Homan's conviction for unlawful wounding, finding the evidence sufficient for that conviction, but it reversed Holman's conviction for use of a firearm in the commission of a felony. The panel reasoned that the "ends of justice" exception

6

to Rule 5A:18 applied to Holman's conviction for use of a firearm in the commission of a felony. The Court of Appeals further concluded that the approbate and reprobate doctrine did not bar the application of the ends of justice exception. The panel observed that Holman had not specifically stipulated to the element of malice. *See Holman v. Commonwealth*, 77 Va. App. 283, 300, 303 (2023).

We granted the Commonwealth an appeal from this decision.

ANALYSIS

The key question before us is whether the Court of Appeals erred in applying the invited error or approbate and reprobate doctrines.[1] The Court of Appeals' application of a legal doctrine, such as the approbate and reprobate doctrine, is a question of law. "We review questions of law de novo." *Amin v. County of Henrico*, 286 Va. 231, 235 (2013).

I.     THE APPROBATE AND REPROBATE DOCTRINE FORECLOSES LITIGANTS FROM ADOPTING CONTRADICTORY POSITIONS.

A. The approbate and reprobate doctrine is a longstanding part of our jurisprudence.

Under settled principles, a litigant cannot "approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)). "The prohibition against approbation and reprobation

---

[1] Although the terms invited error and approbate and reprobate are often used interchangeably, some cases note that there are distinctions between the two concepts. *See Dufresne v. Commonwealth*, 66 Va. App. 644, 661 n.14 (2016) (Humphreys, J., dissenting) (noting that "the approbate-reprobate bar and the invited error doctrine are analytically different in both their definition and application"), *vacated by Dufresne v. Commonwealth*, 2018 Va. Unpub. Lexis 5 (Va. 2018); *Nelson v. Commonwealth*, 71 Va. App. 397, 404 (2020) (observing that the approbate and reprobate doctrine "is not to be confused with the invited error doctrine"). The parties in this case do not treat the concepts as separate. Accordingly, we do not address the boundaries that might delineate the two concepts.

forces a litigant to elect a particular position, and confines a litigant to the position that she first adopted." *Matthews v. Matthews*, 277 Va. 522, 528 (2009).

The approbate and reprobate doctrines constitute a longstanding component of our jurisprudence. *See, e.g.*, *Heth v. Commonwealth*, 126 Va. 493, 498 (1920). This doctrine "precludes litigants from 'playing fast and loose' with the courts . . . or 'blowing hot and cold' depending on their perceived self-interests." *Babcock & Wilcox v. Areva*, 292 Va. 165, 204 (2016) (citations omitted). This doctrine "has ancient roots" and exists to "protect[] a basic tenet of fair play: No one should be permitted, in the language of the vernacular, to talk through both sides of his mouth." *Wooten v. Bank of Am.*, *N.A.*, 290 Va. 306, 309-10 (2015).

The doctrine against approbation and reprobation applies both to assertions of fact and of law. *Wooten*, 290 Va. at 310 n.1. And it applies to all litigants, whether it is the Commonwealth or a defendant in a criminal case. *See In re Commonwealth*, 278 Va. 1, 12-13 (2009) (concluding that the Commonwealth was not "allowed to approbate and reprobate" by taking inconsistent positions in two related but different cases: a criminal proceeding and a mandamus action); *Rowe*, 277 Va. at 502 (defendant in a criminal case could not approbate and reprobate).

B. The approbate and reprobate principle differs from rules based procedural default.

Rules of procedural default and the approbate and reprobate doctrine are both rooted in the concept of an adversarial system of justice and in basic notions of fair play. The ends of justice exception to the rules of procedural default, however, is distinct from the approbate and reprobate doctrine. The ends of justice exception is found in the text of our rules of court, Rules 5:25 and 5A:18. The ends of justice exception applies when, through oversight, counsel has failed to timely and specifically object, but, to prevent a miscarriage of justice, it is necessary for the court to overlook this failure to object. *See, e.g., Jimenez v. Commonwealth*, 241 Va. 244,

8

250 (1991) (applying the ends of justice exception based on the failure of the trial court to instruct the jury on "a principle of law [that was] vital to a defendant in a criminal case").

The approbate and reprobate doctrine is not found in our rules of court. And in contrast to the rules of procedural default, which contemplate a situation where there is oversight or neglect, the litigant in the approbate and reprobate situation has affirmatively staked out a position or asked the court to act. "The approbate-reprobate doctrine is broader and more demanding than" the rules of procedural default. *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010). "[T]here is no 'ends of justice' exception to the approbate and reprobate doctrine." *Nelson v. Commonwealth*, 71 Va. App. 397, 405 (2020). *See also Rowe*, 277 Va. at 503; *Alford*, 56 Va. App. at 709-10; *Saunders v. Commonwealth*, 211 Va. 399, 400-01 (1970).[2] As the Court of Appeals observed, "[i]t can hardly be a 'grave injustice' to a defendant's essential rights for a trial court to make an agreed-upon ruling." *Nelson*, 71 Va. App. at 405.

II. THE APPROBATE AND REPROBATE DOCTRINE APPLIES WHEN A DEFENDANT "APPROBATES" BY ADOPTING A TRIAL STRATEGY DISCLAIMING ANY CHALLENGE TO THE USE OF A FIREARM CONVICTION AND PLEADING GUILTY TO IT, AND THEN "REPROBATES" BY LATER CHALLENGING THAT CONVICTION.

The "approbate and reprobate" doctrine applies when the error the defendant complains of on appeal is "obviously the result of his own strategy and actions at trial." *Rowe*, 277 Va. at 502. *See, e.g., id.* at 501-03 (applying the doctrine to bar an argument that the defendant could not be convicted of assault on a police officer on the basis that it is not a lesser included offense of attempted capital murder when the defendant advanced the argument that he could be

---

[2] There are, of course, exceptions to the bar imposed by the approbate and reprobate doctrine, such as when the trial court goes beyond the limits of its subject matter jurisdiction, *Bazemore v. Commonwealth*, 42 Va. App. 203, 219-20 (2004), or when it imposes a void sentence in excess of the applicable statutory maximum, *Batts v. Commonwealth*, 30 Va. App. 1, 11 (1999). None of these exceptions apply here.

convicted of this offense rather than the more serious charge); *Alford*, 56 Va. App. at 708-09

(applying the doctrine to reject the claim that the trial court erred in granting an instruction on

assault and battery as a lesser included offense of rape because the defendant asked for the

instruction); *Manns v. Commonwealth*, 13 Va. App. 677, 679-80 (1992) (applying the doctrine to

reject the defendant's argument that the evidence was insufficient to convict him of

misdemeanor interfering with the property rights of another when at trial he implored the trial

court to convict him of this very misdemeanor rather than a felony).

Holman's decision not to contest the charge for use of a firearm in the commission of a

felony was plainly the result of a trial strategy. He repeatedly informed the court that he was not

challenging the use of a firearm charge, and he pled guilty to that charge. Counsel agreed with

the circuit court that Holman was stipulating to the charge of use of a firearm in the commission

of a felony. Counsel's overarching strategy was to focus on securing a lesser conviction on the

original charge of aggravated malicious wounding, which carried a possible life sentence.

We hold that Holman approbated and reprobated on the charge of use of a firearm in the

commission of a felony. To approbate is "[t]he act of formally or authoritatively declaring

something to be proper, commendable, or good." Black's Law Dictionary 126 (11th ed. 2019)

(defining "approbation"). *See also* Webster's Third New International Dictionary 106 (2002)

(defining "approbate" as "to express approval of formally or legally," or "to accept as legal or

valid"). Against the backdrop of his mitigation strategy, Holman approbated by staking out a

position with respect to the charge of use of a firearm in the commission of a felony – that he

was guilty of it and that he had stipulated to it. He later reprobated, by "raising an objection or

exception, as to the competency of a witness or the sufficiency of evidence." Black's Law

Dictionary 1558 (11th ed. 2019). *See also* Webster's Third New International Dictionary 1927

(2002) (defining "reprobate" as "to disapprove, condemn" or "to disapprove of: reject as unworthy").

The Court of Appeals rejected the application of the approbate and reprobate doctrine, reasoning that Holman's counsel never specifically stipulated that he acted with malice in discharging the firearm. We have never applied the approbate and reprobate doctrine at such a granular level. In other words, application of the doctrine does not turn on whether a litigant has made a specific stipulation. Instead, we have described the doctrine as confining a litigant to a particular position. *Rowe*, 277 Va. at 502 (litigant cannot "approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory" (citation omitted)); *Matthews*, 277 Va. at 528 ("The prohibition against approbation and reprobation forces a litigant to elect a particular position, and confines a litigant to the position that she first adopted.").

Holman's position with respect to the charge of using a firearm in the commission of a felony was clear. Defense counsel stated that Holman was pleading guilty to the charge and confirmed for the circuit court that the defense had "stipulated to those." Defense counsel reiterated that understanding at the sentencing hearing. Holman staked out a specific position: that he was not guilty of aggravated malicious wounding, but that he would not contest the remaining charges. The circuit court granted him the relief he sought: it granted his motion to strike the aggravated malicious wounding charge he had been facing, and accepted his plea of guilty to use of a firearm in the commission of a felony. On appeal, he now attempts to disavow that very same legal position with respect to the charge of use of a firearm in the commission of a felony – a classic instance of a party's violation of the approbate and reprobate principles. *See, e.g.*, *Rowe*, 277 Va. at 502-03 (where "[t]he record of the proceedings demonstrates that [the

11

defendant] acquiesced without objection when the trial court accepted his theory" regarding the defendant's criminal liability, on appeal the defendant "cannot now complain of the trial court's adoption of the legal theory he introduced and repeatedly urged the trial court to adopt[ b]ecause . . . [he] may not approbate and reprobate" by staking out a position, convincing the trial court to accept that position, "and then seek[ ] reversal of his conviction based upon it"); *Garlock Sealing Techs., LLC v. Little*, 270 Va. 381, 387-88 (2005) (where the defendant-appellant, "over the plaintiff[-appellee]'s objections, convinced the circuit court to permit the jury to apportion fault among certain entities that were not parties to th[e] litigation," the Court would "not permit [the defendant-appellant] to obtain [that] apportionment . . . and then complain about the method of apportionment" on appeal because "no litigant . . . will be permitted to approbate and reprobate"); *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367 (2003) (where, "during a hearing on post-trial motions" the defendant agreed with the trial court's conclusion concerning the basis of the jury's finding, but in her appellate brief took the opposite position, such argument would not be considered because "no litigant . . . will be permitted to approbate and reprobate"); *Clark v. Commonwealth*, 220 Va. 201, 214 (1979) ("The defendant, having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position" with respect to that action on appeal) (citing *Commonwealth v. Beavers*, 150 Va. 33, 38 (1928) (referring to this as "a well established principle")).

Finally, we address the Court of Appeals' observation that a court is not bound by a concession of law. We agree with the Court of Appeals that a concession of law is not binding on a court. We "do not allow parties to define Virginia law by their concessions." *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 454 n.6 (2013). However, in this case we are dealing with a

12

"concession of law that qualifies . . . as a waiver." *Butcher v. Commonwealth*, 298 Va. 392, 395 (2020).

> This principle [that the court is not bound by a party's concession of law] must be distinguished . . . from an appellant's concession of law that qualifies either as a waiver for purposes of Rule 5A:18 or as an express withdrawal of an appellate challenge to a trial court judgment. In either scenario, we may accept the concession — not as a basis for deciding the contested issue of law, but as a basis for not deciding it.

*Logan v. Commonwealth*, 47 Va. App. 168, 172 n.4 (2005) (en banc). What is true for a waiver under Rule 5A:18 or when counsel expressly withdraws an appellate challenge to a trial court judgment is no less true of a litigant who seeks to approbate and reprobate.

The approbate and reprobate doctrine precludes Holman from challenging his conviction for use of a firearm in the commission of a felony. The Court of Appeals erred in holding otherwise.

CONCLUSION

We reverse the judgment of the Court of Appeals and enter final judgment for the Commonwealth.

*Reversed and final judgment.*

13