COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Raphael and Frucci
Argued by videoconference


MATTHEW HAMDEN COOK

                                                    MEMORANDUM OPINION[*] BY
v.          Record No. 0499-23-4          JUDGE MARY BENNETT MALVEAUX
                                                    JANUARY 28, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge[1,2]

Thomas F. Koerner, Jr., for appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Francis A. Frio, Senior Assistant
Attorney General, on brief), for appellee.


Pursuant to a plea agreement, Matthew Hamden Cook ("appellant") was convicted by the

circuit court of second-degree murder, in violation of Code § 18.2-32. He appeals from the

circuit court's sentencing order, contending that the court erred by imposing a term of suspended

incarceration outside the provisions of the plea agreement, except for that required by Code

§ 19.2-295.2(A). For the following reasons, we affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Daniel E. Ortiz briefly participated in this case in the circuit court. Subsequently
elected to this Court, Judge Ortiz did not participate in the consideration or resolution of this
appeal.

[2] Judge David Bernhard presided over the proceedings below. Now a member of this
Court, Judge Bernhard took no part in this decision.

BACKGROUND

On appeal, we recite the evidence in the "'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Miner v. Commonwealth*, 80 Va. App. 414, 417 n.2 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). Doing so "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Appellant was indicted for murder in the death of his fiancée. Under the terms of a written plea agreement, he agreed to plead no contest to "Murder in the Second Degree (Virginia Code § 18.2-32)" and "to serve an active period of incarceration of twenty-one (21) years." Paragraph 9 of the plea agreement stated that

> The following plea agreement is the full and complete agreement between me, my attorney, and the Commonwealth's Attorney:
>
> The defendant agrees to enter a plea of guilty to Murder in the Second Degree . . . , as charged in Count I of the indictment, and agrees to serve an active period of incarceration of twenty-one (21) years.

Paragraph 11 of the agreement stated, "I understand that the [c]ourt may accept or reject the agreement and may defer its decision as to the acceptance or rejection until there has been an opportunity to consider a pre-sentence report and other evidence."

During the plea hearing, the Commonwealth's attorney told the circuit court that appellant had agreed to enter a "plea to second degree murder with twenty-one years active to serve." When the court asked about the terms of the agreement, the Commonwealth explained that "[t]he parties simply agree[d] to [appellant's] active time of twenty-one years" but that they "didn't negotiate any post-release supervision," because that issue was "statutory," "not something [the Commonwealth

- 2 -

would] agree upon," and "up to the [j]udge." In response to the circuit court's question whether "there's no suspended time," or if suspended time was "left to the [c]ourt," the Commonwealth reiterated that "[a]ll of that's left to the [c]ourt. His active time is all that we agreed to."

Appellant told the circuit court that if it was "willing to suspend some time, [he was] willing to accept that time as probation." The Commonwealth, however, clarified that "the agreement is twenty-one years active . . . [n]ot to suspend the twenty-one years," and the parties were currently addressing "anything hanging over his head after the fact." Appellant did not object to the Commonwealth's characterization of the agreement.

The following exchange then occurred between the circuit court, the Commonwealth, and appellant's standby counsel[3]:

> THE COURT: [S]o the [c]ourt, under this agreement, as I understand it, the [c]ourt could give you--I'm not saying I would do that, but I'm just--the [c]ourt could give you forty years, suspend nineteen years of it, you have twenty-one years to serve, and then the [c]ourt can determine the period for which that suspended sentence is suspended. Be suspended for--but it would have to be suspended for at least six months before--which would then excuse post-release supervision.
>
> Am I correct there? That if he's--
>
> THE COMMONWEALTH: That's my understanding, Your Honor.
>
> THE COURT: Is that--[standby counsel], is that your understanding?
>
> STANDBY COUNSEL: I think so, Judge.

Standby counsel then explained that, while appellant "did not want any post-release supervision," it was his understanding that "the agreement is just for twenty-one years, and then

---

[3] Appellant appeared *pro se*, with appointed standby counsel, at his plea and sentencing hearings.

[the circuit court] statutorily will give [appellant] whatever else to serve." The circuit court explained that "one way or the other there has to be some supervision."

Appellant reiterated his request that the circuit court "suspend time off" his 21-year active sentence. The circuit court stated it could not do that "[i]f it's not your agreement." The court told appellant that if it accepted the plea agreement, it would "carry out" the 21-year "active time agreement," but as to "suspended time, or . . . post-release supervision, the [c]ourt would order a presentence report, we would come back in about six weeks or so, and then you can advocate your view as to what that period should be." The court advised appellant that by statute it was required to impose a minimum of six months' supervision, either by suspending part of his sentence "at least . . . for six months" or by imposing a "period of post-release supervision."

After speaking with standby counsel, appellant acknowledged that the Commonwealth told him the parties "couldn't put the probation thing on [sic] the agreement. . . . So, we don't have to worry about it. . . . I'll argue that in a couple weeks." The circuit court asked appellant whether he still "want[ed] to go forward with" the plea agreement, "with the understanding that obviously this issue of supervision w[ould] be decided at a subsequent hearing[.]" Appellant replied affirmatively.

The circuit court then conducted a plea colloquy. When discussing the rights appellant was giving up, the court noted that "[t]his does not restrict at all your ability to make arguments on this issue of suspended time, post release supervision . . . you obviously may make argument on that, and present whatever you think is appropriate within the bounds of the law." The court asked appellant whether he understood "that by pleading no conte[s]t . . . the only thing for the [c]ourt . . . to decide is one, whether it accepts the plea agreement, and two, the issue of supervision after [he] serve[d his] sentence." Appellant replied, "[c]orrect."

The circuit court found that appellant's plea was "knowingly, voluntarily, and intelligently tendered" and convicted him of second-degree murder. The circuit court stated that it would "bind [it]self to . . . the agreement reached between the Commonwealth and [appellant]," ordered a presentence report, and continued the matter for sentencing, at which it would "consider[] the issue of suspended time."

At the sentencing hearing, the circuit court noted that it was "obviously governed by the prior agreement of the parties, which called for the imposition of a 21-year sentence. There was no agreement on suspended time or other terms." The circuit court then stated that it had "previously accepted the agreement, and so it's the judgment of this [c]ourt as follows. [Appellant] is sentenced to 40 years, 19 years of which will be suspended for 10 years of good behavior. The first three of those years will be subject to supervised probation." The circuit court also imposed conditions including mental health counseling and evaluation, substance abuse evaluation, drug testing, and cognitive behavioral therapy. Appellant did not object to the court's ruling.[4] The circuit court subsequently entered a sentencing order reflecting the ruling.

Appellant subsequently moved to modify the sentence, alleging that the sentencing order "deviates from the term[s] of the plea agreement," and requesting that the circuit court "modify the sentencing order to reflect the actual agreement between the parties." In his motion, appellant noted that "the agreement is silent as to any term of suspended sentence or conditions of probation."

The circuit court denied the motion. In a written order, the court found that appellant "was fully advised at the time of his plea" that although the agreement limited the court's authority "to impose the fixed amount of active incarceration detailed therein, the amount of any suspended

_____

[4] Before being sentenced, appellant stated that he believed was given an "unfair plea deal" and stated that his plea "might be withdrawn." *See* Code § 19.2-296. Appellant did not request to withdraw his no contest plea, nor did he contend that the circuit court rejected the plea agreement under Code § 19.2-254.

time and probationary terms were left open and subject to final argument and decision" at the sentencing hearing.  Additionally,

> [i]n full knowledge that there was no agreement on suspended time, the period of probation, nor as to probationary terms, and that such open terms would be decided on the sentencing date, [appellant] nevertheless elected to proceed with his plea under such understandings, thereby gaining the certainty that his active incarceration time would be limited to twenty-one (21) years.

This appeal followed.

## ANALYSIS

Appellant contends that the circuit court "erred in imposing a sentence outside of that provided in the plea agreement."

Our appellate courts "have held that 'general principles of contract law apply to [all] plea agreements.'" *Thomas v. Commonwealth*, 303 Va. 188, 200 (2024) (alteration in original) (quoting *Wright v. Commonwealth*, 275 Va. 77, 79 (2008)).  "Interpretation of a contract is a question of law that is reviewed de novo." *Palmer & Palmer Co. v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 289 (2008); *see also Hood v. Commonwealth*, 269 Va. 176, 181 (2005).

We first note that "[t]he law effective when the contract is made is as much a part of the contract as if incorporated therein." *Smith v. Commonwealth*, 286 Va. 52, 57 (2013) (alteration in original) (quoting *Wright*, 275 Va. at 81).  Thus, we review the relevant statutes in effect when the parties entered the agreement.  Code § 18.2-32 provides for between 5 and 40 years of incarceration for second-degree murder.  In addition, the circuit court has statutory authority to suspend a defendant's sentence in whole or in part, place him on probation, and order other terms as necessary.  Code § 19.2-303.  But where, as here, a defendant has been convicted of a felony and the circuit court imposes an active term of incarceration, the trial court "shall, . . . except in cases in which the court orders a suspended term of confinement of at least six months, impose a term of incarceration, in addition to the active term, of not less than six months nor more than three years."

- 6 -

Code § 19.2-295.2(A). This "additional term shall be suspended and the defendant . . . placed under postrelease supervision" whose period "shall not be less than six months nor more than three years." *Id.*

We look next to the language of the plea agreement. "When a contract is clear and unambiguous, it is [an appellate] court's duty to interpret the contract, as written." *Palmer*, 276 Va. at 289. "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Id.* (quoting *W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264 (1962)).

Here, by the plea agreement's express terms, appellant agreed to plead no contest to second-degree murder and "to serve an active period of incarceration of twenty-one (21) years." As noted in the agreement, this was "the full and complete agreement between [appellant, his standby counsel], and the Commonwealth's attorney." The plain language of the agreement did not address a suspended sentence or post-release supervision, much less foreclose the possibility that the court could suspend the sentence or impose post-release supervision at sentencing.

The circuit court followed the plea agreement and the relevant statutes in imposing appellant's sentence. The combined period of active and suspended incarceration, 40 years, fell within the limits of Code § 18.2-32. The circuit court was also within its statutory authority to suspend 19 years of that sentence under Code § 19.2-303, leaving the agreed-upon active term of 21 years, because even though the plea agreement did not address suspended time, Code § 19.2-303 was as much a part of the agreement as if it were expressly incorporated therein. *Smith*, 286 Va. at 57. Finally, as the circuit court told appellant, under Code § 19.2-295.2(A), "one way or another there has to be some supervision," and it accordingly made the first three years of appellant's suspended sentence subject to supervision. The sentence was therefore aligned with the plea

- 7 -

agreement, which only fixed the term of active incarceration at 21 years, and was silent as to a suspended period of incarceration or any post-release supervision.

What is more, the parties explicitly acknowledged the agreement's silence on any suspension and post-release supervision. The Commonwealth told the circuit court that suspended time was "left to the [c]ourt" and post-release supervision was "statutory," "not something [the Commonwealth would] agree upon," and "up to the [j]udge." Appellant also knew the parties "couldn't put the probation thing on the agreement." And when appellant asked the circuit court if it was "willing to suspend some time," standby counsel clarified that "the agreement [wa]s twenty-one years active," and the circuit court reminded appellant that "suspended time, or . . . post release supervision" would be decided at the later sentencing hearing. Appellant acknowledged this by saying "we don't have to worry about it. . . . I'll argue that in a couple weeks."

Appellant now asks this Court to interpret the written plea agreement to add language where he acknowledges the agreement is silent. But "[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'" *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (alteration in original) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). "The 'doctrine against approbation and reprobation' applies both to assertions of fact and law and precludes litigants from 'playing fast and loose' with the courts, or 'blowing hot and cold' depending on their perceived self-interests." *Id.* at 403 (citations omitted) (quoting *Babcock & Wilcox v. Areva*, 292 Va. 165, 204-05 (2016)).

Contrary to appellant's position on appeal, appellant affirmed—with the knowledge that the circuit court was required to impose at least some period of suspended time or post-release supervision, and knowing that the plea agreement addressed only the active sentence—that he wanted to "go forward with" the plea agreement. At the plea hearing, the circuit court advised him

concerning its authority to impose a greater sentence but suspend any part that exceeded the agreed-upon 21 years, and its statutory obligation to impose post-release supervision if it did not suspend any part of the sentence. The court explicitly warned appellant that "[o]ne way or the other there has to be some supervision," to which appellant responded, "[r]ight, and that's what we're asking." The circuit court outlined the exact punishment it envisioned:

> under this agreement, as I understand it, the [c]ourt could give you . . . forty years, suspend nineteen years of it, you have twenty-one years to serve, and then the [c]ourt can determine the period for which that suspended sentence is suspended . . . but it would have to be suspended for at least six months before--which would then excuse post-release supervision.

The Commonwealth and appellant's standby counsel both confirmed that this was their understanding. Appellant then did not object when, at the sentencing hearing, the circuit court sentenced him in accordance with the "previously accepted . . . agreement."[5] He cannot now change course and challenge the court's imposition of post-release supervision where he knew that it would only be "excuse[d]" if the "suspended sentence [wa]s suspended . . . for at least six months" and that it was not covered by the agreement and could be imposed at the sentencing hearing. *See Grier v. Commonwealth*, 35 Va. App. 560, 569 (2001) ("[H]aving agreed upon the action taken by the trial court, [defendant] should not be allowed to assume an inconsistent

---

[5] Appellant also did not object to the circuit court's order denying his motion to modify the sentence; we find the motion itself sufficiently alerted the circuit court and the Commonwealth to his argument to preserve that argument for our review. *See* Rule 5A:18; *Maxwell v. Commonwealth*, 287 Va. 258, 265 (2014) (noting that, for an objection to meet the requirements of Rule 5A:18, it must be made at a point in the proceeding "'when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error' . . . [w]hile also giving 'the opposing party the opportunity to meet the objection at that stage of the proceeding'" (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010))).

position." (second alteration in original) (quoting *Manns v. Commonwealth*, 13 Va. App. 677, 679 (1992))).[6]

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[6] Appellant argues, however, our Supreme Court's decision in *Wright* supports his position that "the only period of suspended time and post release supervision that the [c]ircuit [c]ourt could impose was that required by . . . Code § 19.2-295.2." In that case, our Supreme Court upheld a circuit court's imposition of "additional terms" of suspended incarceration and post-release supervision pursuant to Code §§ 18.2-10(g) and 19.2-295(A), even those terms were not included in the plea agreement the circuit court had accepted. 275 Va. at 78-79. The Court noted that "the provisions of both Code sections constituted a part of Wright's plea agreement as though they were incorporated therein," so "the plea agreement necessarily included the suspended sentence and post-release supervision as a matter of law." *Id.* at 81-82. Accordingly, the circuit court's imposition of these additional terms "did not alter or modify the terms of the parties' plea agreement." *Id.* at 82. Thus, contrary to appellant's assertion, *Wright* supports our conclusion that the circuit court did not err in imposing suspended time and post-release supervision here where, because the parties only agreed on appellant's active term of incarceration, the additional terms did not alter or modify the terms of the plea agreement.

- 10 -