COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Frucci and Bernhard
Argued at Fairfax, Virginia


DONNIE JUSTIN WHITE

MEMORANDUM OPINION* BY
v.        Record No. 1307-24-4        JUDGE STEVEN C. FRUCCI
JULY 1, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

Hannon E. Wright (Rakness & Wright, PLC, on briefs), for
appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The circuit court found Donnie Justin White in violation of the terms and conditions of his probation, revoked his suspended sentences, and ordered him to serve them in their entirety. White contends that the circuit court imposed an active sentence that exceeded the maximum permitted by Code § 19.2-306.1. He argues that the circuit court erred in revoking his suspended sentences because the maximum period for which he might originally have been sentenced had expired. He also contends that the circuit court abused its discretion in failing to properly weigh his mitigating evidence. For the following reasons, this Court affirms the circuit court's judgment.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] This Court grants White's amended motion for taking of judicial notice and has considered the facts stated within it.

BACKGROUND

"In revocation appeals, the [circuit] court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

In 2013, the circuit court convicted White of threatening to burn or destroy a building in violation of Code § 18.2-83. On September 10, 2013, the circuit court sentenced White to ten years of imprisonment with all but nine months suspended. The circuit court also ordered White to complete 5 years of supervised probation and to remain of good behavior for 20 years after his release from confinement.

On August 14, 2017, the circuit court convicted White of assault and battery of a law enforcement officer, brandishing a firearm, possessing marijuana, and two counts of assault and battery. The circuit court sentenced him to five years of incarceration, with three years and six months suspended, for the assault and battery of a law enforcement officer. The circuit court imposed 12 months suspended sentences for the 2 convictions of assault and battery and the brandishing a gun conviction. The circuit court also sentenced White to 30 days in jail, all suspended, for the marijuana offense. The suspended sentences were conditioned upon White completing a substance abuse evaluation and treatment as ordered by his probation officer, completing the Salvation Army program, and reporting to the probation office within 48 hours of his release from incarceration.

Partly based upon these new convictions, the circuit court found White in violation of his probation for the 2013 conviction on December 5, 2017.[2] The circuit court revoked the suspended sentence and resuspended all but three years.[3] The circuit court ordered White to be of good behavior for 20 years.

On November 22, 2022, upon a guilty plea, the circuit court convicted White of conspiring to deliver drugs to a prisoner.[4] The circuit court sentenced White to five years' imprisonment with all but six months suspended. The circuit court conditioned the suspended sentence on White reporting to his probation officer within 24 hours of his release from incarceration.

In a January 3, 2023 major violation report ("MVR"), White's probation officer alleged that he had violated Condition 1 (obey all federal, state, and local laws) of his probation because he was charged with driving while under the influence and on a revoked or suspended license, as well as a misdemeanor offense of eluding the police. On June 20, 2023, before any hearing on the probation violation, White was indicted for possessing drugs. A September 1, 2023 MVR addendum indicated that White was convicted for the driving on a revoked or suspended license and eluding the police.

Under a plea agreement, on October 24, 2023, White pleaded guilty to the drug charge, and the circuit court sentenced him to five years' incarceration with four years and six months suspended. Also by agreement, White conceded to being in violation of his probation for the

---

[2] In addition to the 2017 Culpeper County convictions, the show cause order stated that White also was convicted in 2017 for obtaining money by false pretenses and petit larceny in Fairfax County and for petit larceny in Chesterfield County.

[3] This Court denied White's petition for appeal of the circuit court's 2017 revocation order. *White v. Commonwealth*, No. 2038-17-4 (Va. Ct. App. Dec. 19, 2018) (order).

[4] The proffer of evidence stated that White conspired with his mother to mail him strips of Suboxone while he was incarcerated in a correctional facility.

2013, 2017, and 2022 convictions. The sentencing revocation report filed stated that the type of revocation was a first technical and a new law violation. The circuit court revoked the suspended sentences and resuspended all of the remaining time on the 2013 and 2017 convictions and all but one year of his sentence for the 2022 conviction. The plea agreement required White to report to the probation office within 24 hours of his release from incarceration, to complete 3 years of probation, and remain of good behavior for 10 years.

By an April 15, 2024 MVR, White's probation officer alleged that he violated Condition 1 of his probation because he was charged in Page County with contributing to the delinquency of a minor, buying alcohol for a person under the age of 21, and petit larceny, offenses that occurred on December 13, 2022, that he was arrested for on December 26, 2023.[5] Relating to those charges, White also had been charged with two failures to appear in court in Page County. In addition, the MVR stated that White violated probation Conditions 4 and 6 (report to probation within three days of release from incarceration and follow probation officer's instructions for reporting) for not reporting to the probation office following his scheduled February 13, 2024 court appearance in Page County and after his release from the Page County jail on April 4, 2024. White violated Condition 8 (not unlawfully use drugs) by testing positive for amphetamines on March 11, 2024. White also violated Condition 10 (not change residence without permission of probation officer) after he was removed from a treatment program in the Richmond area and did not provide the probation officer with an update on his whereabouts. Also, on March 4, 2024, the probation officer determined that White's address was no longer valid, so he was charged with violating Condition 11 (not abscond from probation supervision).

---

[5] The record does not demonstrate that these charges were used as a basis for either of the prior revocations.

An MVR addendum noted that on May 13, 2024, White was convicted in Page County for contributing to the delinquency of a minor, buying alcohol for a person under 21, and shoplifting earlier on May 13, 2024. The related failure to appear charges were nolle prossed or dismissed. The addendum confirmed that, on April 18, 2024, the probation officer determined that White was enrolled in Infinite Solutions Behavioral Services, a crisis stabilization program, from April 3 to 16, 2024. During that time, White had access to telephones. While White did call the probation office during the week of April 1 to 5, 2024, he did not leave a message for his supervising probation officer, who was out that week. Nor did White leave her a voicemail or text message to report his change in address or location.

At the following June 7, 2024 revocation hearing, White said he turned himself in on April 20, 2024, for the alleged probation violation. At the time, White had been residing with the Infinite Solutions program since mid-March. While incarcerated since then, he had studied online, including courses on substance abuse and anger management. He said he had been sober and used no illegal substances since December 2023. White also said he was experiencing medical issues that included a heart condition and a staph infection and that he had employment and housing available for him if released from jail.

White said that he met with Myra Fields, the chief probation officer, three times, but that a probation officer was never formally assigned to him. After staying with his mother for four days upon his release in December 2023, he obtained Fields's permission to work in Richmond, and he kept her advised of his whereabouts. In early March, White stayed at a motel on Midlothian Turnpike in Richmond. He said that he called Fields while he was in jail on April 4, 2024. After he was released on bond, he returned to the Infinite Solutions program in Richmond. By the time he contacted Fields on April 15, 2024, she already had issued the MVR against him. White claimed that he tried to contact Fields but that she was not in the office. He also said that

he was in the intensive care unit in a Richmond hospital February 12 to 29, 2024, due to heart issues.

For contributing to the delinquency of a minor, White was sentenced to 12 months in jail, all suspended. He admitted that he was on supervised probation at the time of the December 2022 offenses. He claimed that the positive drug test for amphetamines was a false positive.

Joyce White ("Joyce"), White's mother, testified that she took him to the probation office twice. In her opinion, White had benefited from the program he was involved with and had a positive outlook. Joyce was convicted for conspiring and sending White drugs while he was in jail.

Noting White's recent success in the recovery program, defense counsel asked the circuit court to impose a sentence at the low end of the guidelines. Counsel argued that White was struggling with substance abuse and mental health issues but had found help in his current crisis stabilization program. He contended that White had not absconded but had maintained contact with the probation office.

Based on his positive drug test and new criminal convictions, the circuit court found White in violation of his probation. The circuit court noted that White's criminal history was 49 pages long, including at least 15 felony convictions. In addition, his prior probation violations demonstrated his lack of compliance and that he was not a good candidate for probation. The circuit court revoked the remaining suspended sentences for the 2013, 2017, and 2022 convictions and ordered White to serve them, thus imposing an active sentence of 16 years, 57 months, and 30 days.

White filed a motion to reconsider the revocation order, contending that his active sentence exceeded the maximum permitted by Code § 19.2-306.1. White moved for reconsideration of his sentence, claiming that he did not commit the violations alleged in the

- 6 -

April 15, 2024 MVR. He maintained that violations stated in the 2024 MVR and addendum were his first technical violations and were thus subject to the sentencing limitation of Code § 19.2-306.1(C).

In a letter opinion, the circuit court stated that the December 2022 offenses occurred during the 20-year period of good behavior for the 2013 and 2017 convictions. The circuit court also found that White's failure to report to probation within 24 hours of his release from incarceration was not a technical violation covered by Code § 19.2-306.1(A)(iii), which requires a probationer to report to the probation office within 3 days of release from incarceration. White's 2022 and 2023 plea agreements required him to report to probation within 24 hours of his release from incarceration; he did not comply with this requirement. The circuit court thus denied White's motion for reconsideration. White appeals.

ANALYSIS

I. The May 13, 2024 Convictions

White contends that the violations leading to the 2024 revocation hearing amounted to first technical violations for which he could receive no active incarceration. *See* Code § 19.2-306.1(C). Subject to certain conditions not at issue here, "in any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Upon determining that a defendant has violated the terms of his suspended sentence, a circuit court may revoke that suspension and "impose a sentence in accordance with the provisions of [Code] § 19.2-306.1." Code § 19.2-306(C). "Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Heart v. Commonwealth*, 75 Va. App. 453, 466

- 7 -

(2022). "The statute 'contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical violations' enumerated in the statute.'" *Id.* (quoting *Green v. Commonwealth*, 75 Va. App. 69, 75 (2022)). However, the circuit court "may revoke the suspension and impose or resuspend any or all of that period previously suspended" for a violation other than a technical violation, a good conduct violation that did not result in a criminal conviction, or for conviction of a criminal offense committed after the date of the suspension. Code § 19.2-306.1(B). "On an appeal of a probation revocation, the [circuit] court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart*, 75 Va. App. at 460 (quoting *Green*, 75 Va. App. at 76).

"Code § 19.2-306(A) has always provided the 'statutory authority for a circuit court to revoke a suspended sentence.'" *Id.* (quoting *Green*, 75 Va. App. at 77). The statute "clearly specifies the periods in which the events amounting to cause for revocation must occur in order for a judge to properly revoke a suspended sentence." *Canty v. Commonwealth*, 57 Va. App. 171, 175 (2010) (quoting *Oliver v. Commonwealth*, 38 Va. App. 845, 849 (2002)). "The 'court may revoke the suspension of sentence' for any cause that occurred within 'the probation period,' or within 'the period of suspension fixed by the court,' or if neither, within 'the maximum period for which the defendant might originally have been sentenced to be imprisoned.'" *Id.* (quoting Code § 19.2-306(A)). "By the plain language of the statute, a trial court is empowered to revoke a suspended sentence for misconduct occurring after the initial suspension of sentence and prior to the expiration of the period of suspension." *Id*. at 175-76. *See Collins v. Commonwealth*, 269 Va. 141, 147 (2005). Furthermore, "[t]hat there are multiple 'periods to which the condition of good behavior' is attached is 'immaterial' if 'the condition of

- 8 -

good behavior was in effect at the time the defendant committed the new offenses.'" *Canty*, 57 Va. App. at 177 (quoting *Coffey v. Commonwealth*, 209 Va. 760, 763-64 (1969)).

> Code § 19.2-306 addresses the effect of a prior [revocation] hearing on the court's authority to consider alleged violations and contains its own statutory preclusionary rule: "If any court has, after hearing, found *no cause*" to "revoke a suspended sentence," then "any further hearing" for that purpose, "*based solely on the alleged violation for which the hearing was held*, shall be barred."

*Id.* (quoting Code § 19.2-306(D)).  However, if a defendant violates his good behavior obligations in a manner "not raised at the [prior] revocation hearing, the [circuit] court ha[s] the power to rely on it at the [later] revocation hearing."  *Id.* at 179.

In the case at hand, White committed new offenses on December 13, 2022, while he was obligated to be of good behavior as a condition of his suspended sentences.  The April 15, 2024 MVR cited that he committed a Condition 1 violation, and the circuit court found that he had received new convictions that it had to consider when rendering its sentence.  There is nothing in the record that indicates the December 13, 2022 offenses were raised at the 2023 revocation, so it was within the circuit court's power to rely on them at the 2024 revocation hearing.[6]  Though the dissent acknowledges that "stated reasons in exercise of [the circuit court's] discretion might potentially involve as little as a statement of reliance on the overall evidentiary record as supporting the judgment," it attempts to limit the circuit court's findings and reasoning by ignoring the MVRs, the evidence presented at the revocation hearing, and the circuit court's direct statements of White having new convictions to consider.  "It would be erroneous for this Court, not being the trier of fact," to ignore "findings of fact from the record to alter the level of

---

[6] White alleges that the Commonwealth was aware of the offenses at issue because of the active warrants that existed at the time of the 2023 revocation hearing.  However, under *Canty*, the question is not whether there were active warrants but whether the offense was raised at the first revocation hearing.  As such, the fact that there were active warrants would be immaterial if they were not mentioned or considered at the prior hearing.

fault flowing from the findings made by the [circuit] court." As the circuit court did not abuse its discretion when it relied on the new convictions to find White in violation of his probation, it was not limited to the active sentence limitations for technical violations.[7]

II. The 2023 Revocation

White also contends that the circuit court exceeded its authority by revoking his suspended sentences after the maximum period for which the defendant might originally have been sentenced had ended under Code § 19.2-306. Specifically, he contends that, though done pursuant to a plea agreement, the circuit court lacked the authority to impose good behavior on the suspended misdemeanor conviction sentences in 2023, and therefore, the circuit court did not have the power to revoke the suspended sentences in 2024. Acknowledging that this was not argued in front of the circuit court at the time of sentencing, White requests this Court apply the ends of justice exception.

"A judgment which is void ab initio is a judgment so affected by a fundamental infirmity that it is no judgment at all," rather "[i]t is a legal nullity from which no rights can be created or divested, binding no one and barring no one." *Hannah v. Commonwealth*, 303 Va. 106, 119 (2024). There are five circumstances in which judgments are void ab initio: "when '(1) [the judgment] was procured by fraud, (2) the court lacked subject matter jurisdiction, (3) the court lacked jurisdiction over the parties, (4) the judgment is of a character that the court lacked power to render, or (5) the court adopted an unlawful procedure.'" *Id.* at 119-20 (alteration in original) (quoting *Watson v. Commonwealth*, 297 Va. 347, 350 (2019)). "Objections to void ab initio judgments may be raised by any party in the case at any point during a valid direct or collateral

---

[7] As the majority finds the circuit court had the power to consider the new convictions as a basis for the 2024 convictions, it declines to address, or respond to, an analysis on whether White's other violations could have been seen as violating a special condition of probation or whether White had prior technical violations.

- 10 -

proceeding where the voidness of the order is properly at issue, including by a court for the first time on appeal." *Id.* at 120. "Void ab initio orders, however, stand in contrast to *voidable* orders, which are actions taken by a court in error but within the bounds of its authority," which "are more common and usually involve a court's failure to comply with precedent or an applicable statute." *Id.* "[O]bjections to voidable errors must be preserved and brought before courts of appeal pursuant to our procedural Rules." *Id.*

When a circuit court "surpasse[s] the bounds of its statutory authority by suspending execution of [a] . . . sentence for periods beyond [that] . . . permitted under amended Code § 19.2-306," such error "does not render the revocation orders a nullity." *Cisneros v. Commonwealth*, 82 Va. App. 147, 163 (2024). Rather, "[a]t most, such orders would be voidable rather than void ab initio." *Id.* In *Cisneros*, the circuit court there improperly applied Code § 19.2-306(C) when it ordered a new period of suspension beyond the period of suspension allowed following the General Assembly's 2021 amendments to Code § 19.2-306(C). *Id.* at 163-64. Applying the Supreme Court's rationale in *Hannah*, this Court then emphasized that the Supreme Court had "'acknowledge[d] that a resuspension is fundamentally distinct from the initial act of sentencing following a criminal conviction' because '[t]he penalty imposed for a probation violation is not a new sentence but [instead] . . . a continuation of the original sentence.'" *Id.* at 167 (alterations in original) (quoting *Hannah*, 303 Va. at 121 n.5). This Court then went on to say, "where the trial court has jurisdiction to revoke a suspended sentence under the provisions of Code § 19.2-306, failure to comply with the statutory parameters for reimposing and/or resuspending the original sentence is voidable error that must be preserved in accordance with Rule 5A:18." *Id.* at 168-69. *See Hannah*, 303 Va. at 124 (stating "any error arising from a misapplication of Code § 19.2-303.1 would render a judgment voidable at most").

- 11 -

Therefore, a court's misapplication of Code § 19.2-303, Code § 19.2-306, and Code § 19.2-306.1 are voidable—not void ab initio—errors.

Furthermore, the approbate and reprobate doctrine precludes this Court from addressing White's challenge to the 2023 order. The approbate and reprobate doctrine "applies when the error the defendant complains of on appeal is 'obviously the result of his own strategy and actions at trial.'" *Commonwealth v. Holman*, 303 Va. 62, 72 (2024) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). A party approbates and reprobates when he "affirmatively stake[s] out a position or ask[s] the court to act" and then complains later that the court took that very action. *Id.* Indeed, "[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (alteration in original) (quoting *Rowe*, 277 Va. at 502). It is well-settled that there "is no 'ends of justice' exception to the approbate and reprobate doctrine." *Holman*, 303 Va. at 72 (quoting *Nelson*, 71 Va. App. at 405).

Here, White acknowledges that his 2023 revocation was pursuant to a plea agreement. At the time, he made an agreement in 2023 with the Commonwealth to plead guilty to having violated the terms and conditions of his probation in exchange for the Commonwealth recommending revoking his previously suspended sentences and resuspending all of the remaining time on the 2013 and 2017 convictions and all but one year of his sentence for the 2022 conviction. He acknowledged and agreed to be placed on a period of general good behavior for ten years. The record before this Court on appeal shows that White did not object to these rulings of the circuit court, rather he requested the court accept the agreement. White's attempt now to challenge the 2023 order on appeal after having agreed to plead guilty and receiving the benefit of a recommended sentence—and after having not objected to the circuit

court's ruling—therefore amounts to approbating and reprobating. Because the ends of justice exception to Rule 5A:18 does not apply when a party approbates and reprobates (and essentially invites the error about which he later complains on appeal), this Court will not disturb the circuit court's 2023 order and White was required to comply with the 2023 order's good behavior requirements.[8]

III. Weight of the Evidence

White contends that the circuit court abused its discretion in weighing his mitigating evidence and imposing his remaining suspended sentence in its entirety. White argues that the circuit court failed to consider "his voluntar[ily] seeking impatient substance abuse [treatment], his declining physical health, his employment, and his rigor in attempting to comply with probation." However, the record demonstrates that White had a lengthy criminal record with a history of noncompliance with probation. The weight to give any mitigating factors presented by the defendant is within the circuit court's purview. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

"Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). "Barring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992).

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of

---

[8] Notably, the circuit court did not attempt to resuspend any portion of the remaining time on the 2013, 2017, and 2022 convictions after the 2024 revocation hearing. As such, the circuit court did not place White on good behavior outside of what Code § 19.2-303 would permit in 2024.

- 13 -

all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the [court] to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)).

Through White's numerous probation violations and his new criminal convictions, he failed to make productive use of the grace that had been extended to him. Having reviewed the record, we hold that the circuit court's decision to revoke his remaining suspended sentence and order him to serve it represents the proper exercise of discretion. *See Alsberry v. Commonwealth*, 39 Va. App. 314, 321-22 (2002) (finding the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant's] offenses and his continuing criminal activity").

CONCLUSION

Since the December 13, 2022 offenses occurred while White was obligated to be of good behavior as a condition of his suspended sentences and were not raised at the prior revocations, the circuit court had the power to consider the new convictions as a basis for the 2024 convictions. Furthermore, White is not permitted to challenge the 2023 revocation under the approbate and reprobate doctrine. As under Code § 19.2-306.1(B), the circuit court "may revoke the suspension and impose . . . all of that period previously suspended" for a violation other than a technical violation, the circuit court was permitted to revoke and impose all of the remaining time that had been previously suspended. Code § 19.2-306.1(B). Furthermore, the circuit court did not abuse its discretion in weighing the evidence before it. As such, this Court affirms the circuit court's judgment.

*Affirmed.*

Bernhard, J., dissenting.

This case presents the question whether the trial court exceeded its statutory authority when it revoked Donnie Justin White's suspended sentences and imposed an active term of incarceration totaling 16 years, 57 months, and 30 days. White contends the trial court imposed active prison sentences in derogation of the requirements of Code § 19.2-306.1.[9] The trial court's specific factual *findings* support only a first technical violation—a transgression for which incarceration is not statutorily permitted. Consequently, I respectfully dissent, and I would reverse White's sentence and remand the case for further proceedings, which could include reinstating supervised probation at the trial court's discretion but not the imposition of active incarceration.

BACKGROUND

The revocation proceeding held on June 7, 2024, lies at the heart of this appeal. At that hearing, the trial court revoked all of White's suspended sentences for his prior convictions and imposed a cumulative sentence of 16 years, 57 months, and 30 days. The journey to this point where the court concluded White was "not a good candidate for probation" dates back more than 11 years.

_____

[9] White additionally avers the trial court was without authority to sentence him on his misdemeanor offenses; this contention is, however, dispelled by the reasoning in *Cisneros v. Commonwealth*, 82 Va. App. 147, 174 (2024).

White also maintains the trial court abused its discretion in not properly weighing his mitigating evidence and imposing his remaining suspended sentences in their entirety. Specifically, White argues the trial court failed to properly weigh "his voluntar[ily] seeking inpatient substance abuse [treatment], his declining physical health, his employment, and his rigor in attempting to comply with probation." Even so, "[t]he trial court was [absent a statutory mandate] not required to mention any of [White's] mitigation evidence or explain the weight it attached to that choice." *Thomas v. Commonwealth*, No. 1429-22-4, slip op. at 32, 2024 Va. App. LEXIS 133, at *45 (Mar. 12, 2024). "'Barring clear evidence to the contrary,' . . . [this Court] 'will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a[n] [arguably] harsh sentence.'" *Fleming v. Commonwealth*, No. 1575-22-2, slip op. at 6, 2024 Va. App. LEXIS 97, at *7 (Feb. 27, 2024) (quoting *Guest v. Commonwealth*, 78 Va. App. 187, 197 (2023)). Although the trial court may have given White's evidence little weight, there is no way to conclude from the record that the trial court failed to consider and weigh the facts introduced by White in mitigation.

- 15 -

In 2013, the trial court convicted White of threatening to burn or destroy a building in violation of Code § 18.2-83. By order of September 16, 2013, the trial court sentenced White to ten years imprisonment with all but nine months suspended. The trial court also ordered White to complete 5 years of supervised probation and to remain of good behavior for 20 years after his release from confinement.

On August 14, 2017, White pleaded guilty to assault and battery of a law enforcement officer, two charges of assault and battery, brandishing a firearm, and possessing marijuana. The trial court sentenced White to five years in prison, suspending three years and six months, for the assault and battery of a law enforcement officer. The court further imposed three 12-month consecutive suspended sentences for the 2 convictions of assault and battery and for brandishing a gun. The court also sentenced White to 30 days in jail, all suspended, for the marijuana offense. White's suspended sentences required him to complete a substance abuse evaluation and treatment, as directed by his probation officer. Additionally, he was required to finish the Salvation Army program he started and report to the probation office within 48 hours of his release from jail.

Based upon these convictions, on December 5, 2017, the trial court found White in violation of his probation imposed for the 2013 conviction.[10] The trial court revoked the 2013 suspended sentence and resuspended all but three years.[11] The court ordered White to be of good behavior for 20 years.

---

[10] In addition to the 2017 Culpeper County convictions, the related show cause order stated White also was convicted in 2017 of obtaining money by false pretenses and petit larceny in Fairfax County, and for petit larceny in Chesterfield County.

[11] In 2018, this Court denied White's petition for appeal of the trial court's 2017 revocation order. *White v. Commonwealth*, No. 2038-17-4 (Va. Ct. App. Dec. 19, 2018) (order).

On November 22, 2022, upon a guilty plea, the trial court convicted White of conspiracy to deliver drugs to a prisoner, the intended recipient being himself.[12] The trial court sentenced White to five years' imprisonment with all but six months suspended. The court conditioned the suspended sentence on White reporting to his probation officer within 24 hours of his release from incarceration.

In a major violation report ("MVR") dated January 3, 2023, White's probation officer alleged he violated Condition 1 (obey all laws). The report cited December 20, 2022 charges of driving under the influence (DUI), driving on a revoked or suspended license, and eluding the police. On June 20, 2023, before any hearing on the probation violation, White was indicted for illegal drug possession. An MVR addendum of September 1, 2023, indicated White was convicted of driving on a revoked or suspended license and eluding the police.

White pleaded guilty to the drug charge on October 24, 2023. The trial court sentenced him to five years in prison, suspending four years and six months. As part of the plea agreement, White admitted to violating his probation for his 2013, 2017, and 2022 convictions. The trial court revoked all previously suspended sentences and resuspended them for ten years, except for one year of his 2022 suspended sentence for conspiracy to deliver drugs to a prisoner. The plea agreement required White to report to the probation office within 24 hours of his release from incarceration, to complete 3 years of supervised probation, and to remain of good behavior for 10 years.

White began probation supervision anew on December 26, 2023. By an MVR of April 15, 2024, his probation officer alleged he violated Condition 1 of probation because he was charged in Page County with contributing to the delinquency of a minor, buying alcohol for a

_____

[12] The proffer of evidence indicated that White conspired with his mother to mail him strips of Suboxone while he was incarcerated.

- 17 -

person under the age of 21, and petit larceny, misdemeanor offenses occurring on December 13, 2022. Relating to those accusations, White had been charged with failing to appear in Page County General District Court on February 13, 2024, and Juvenile and Domestic Relations District Court on February 15, 2024. In addition, the MVR stated White violated probation Conditions 4 (report to probation) and 6 (follow instructions of probation officer) by failing to report to the probation office following his scheduled February 13, 2024 court appearance in Page County General District Court, and after his release from the Page County jail on April 4, 2024. White was further alleged to have violated Condition 8 (unlawful use of drugs) by testing positive for amphetamines on March 11, 2024. He claimed the positive drug test for amphetamines was a false positive. White also allegedly violated Condition 10 (to not change residence without permission of his probation officer) after he was removed from a treatment program in the Richmond area and purportedly did not provide the probation officer with an update on his whereabouts. Also, on March 4, 2024, the probation officer concluded White's address was no longer valid, so she subsequently accused him of violating Condition 11 (not to abscond from probation supervision).

An MVR addendum noted that on May 13, 2024, White was convicted in Page County for contributing to the delinquency of a minor, buying alcohol for a person under 21, and shoplifting. He was sentenced to 12 months in jail suspended on each of the 3 charges. A nolle prosequi was entered on the failure to appear charges or they were otherwise dismissed. The addendum confirmed that, on April 18, 2024, the probation officer determined that from April 3 to 16, 2024, White was enrolled in Infinite Solutions Behavioral Services, a crisis stabilization program. During that time, White had access to telephones. White called the probation office during the week of April 1 to 5, 2024, but did not report his change in address or location. He

did not leave a voice or text message for his supervising probation officer, who was away that week.

At the June 7, 2024 revocation hearing, the court did not engage White in a plea colloquy to determine whether he admitted or denied the alleged violations set forth in the process with which he was served. Instead, the judge stated, "this is a revocation of probation proceeding," and that the court was taking "judicial notice of the entire contents of the file," including "the major violation reports." The trial court's action contravened Virginia Rule of Evidence 2:201 in not limiting itself to only taking "judicial notice of a factual matter *not subject to reasonable dispute*." Va. R. Evid. 2:201 (emphasis added). Most of the allegations in the major violation reports were disputed by White on the record as noted herein. Because there was no objection to the trial court's misapplication of Rule 2:201, however, the issue of whether the MVR of April 15, 2024, and MVR addendum of May 13, 2024, were required to be formally admitted as evidence, was waived.

White testified at the hearing that he turned himself in for the alleged probation violation on April 20, 2024. At the time, White had been residing with the Infinite Solutions program since mid-March. While incarcerated after surrendering himself, he had studied online, including courses on substance abuse and anger management. He said he had been sober and used no illegal substances since December 2023. White was experiencing medical issues that included a heart condition and a staph infection. White had employment and housing available for him if released from jail.

White said he met with Myra Fields, the chief probation officer, three times, but to his knowledge, a probation officer was never formally assigned to him. After staying with his mother for four days upon his release in December 2023, he obtained Fields's permission to work in Richmond and kept her advised of his whereabouts. In early March, White stayed at a

motel on Midlothian Turnpike in Richmond. He said he called Fields while he was in jail on April 4, 2024. After he was released on bond, he returned to the Infinite Solutions program in Richmond. By the time he contacted Fields on April 15, 2024, she had already issued the MVR against him. White claimed he tried to contact Fields earlier, but she was not in the office. He also said he was in the intensive care unit in a Richmond hospital from February 12 to 29, 2024, due to heart issues.

Joyce White ("Ms. White"), White's mother, testified she took him to the probation office twice. She stated White had benefited from the program he was involved with and had a positive outlook. Ms. White was convicted for conspiring to send White drugs (Suboxone) while he was incarcerated.

Noting White's recent success in his recovery program, defense counsel requested the trial court impose a sentence pursuant to a lower version of the sentencing guidelines and thereby allow White to continue on his path to sobriety. Counsel maintained White was struggling with substance abuse and mental health issues but had found help in his current crisis stabilization program. He contended White had not absconded but had maintained contact with the probation office.

Accepting the MVR contention that White tested positive for amphetamines on March 11, 2024, and "failed to report to the probation office," the trial court, on that stated basis, revoked White's remaining time for his suspended sentences for his 2013, 2017, and 2022 convictions previously imposed in the court's November 1, 2023 order. The court's primary evidentiary focus was on White's "significant criminal history, and . . . of not complying with court orders," including, but "not limited to, reporting when he's supposed to." The court ordered White to serve an active sentence of 16 years, 57 months, and 30 days; 36 months and 30 days of the sentence respected 4 misdemeanor convictions, and the rest was penitentiary time.

White objected to the revocation order, arguing his sentence exceeded the permissible statutory maximum under Code § 19.2-306.1. He also moved for reconsideration, including assertions that the alleged violations in the April 15, 2024 MVR were largely unfounded. He maintained the violations stated in the MVR and addendum were together, his first technical violation, and thus subject to the sentencing limitations of Code § 19.2-306.1(C).

In a letter opinion dated July 12, 2024, responding to White's motion, the trial court sought to justify retroactively its June 25, 2024 revocation ruling in two main respects. First, the court professed the December 2022 misdemeanor offenses resulting in 2024 convictions could be considered, because they occurred during the 20-year period of good behavior for White's 2013 and 2017 convictions. Of parenthetical note, the probation officer stated in her MVR that those offenses predated White's "current period of supervision," i.e., they occurred before the November 1, 2023 order was entered, which had revoked and resuspended the sentences for all his prior cases. Significantly, the trial court never stated at its June 7, 2024 hearing, or in its June 25, 2024 final sentencing order, that it was relying for its judgment on a finding of new law violations during White's period of good behavior as a basis for revocation of all of White's sentences.

Second, the trial court also stated White failed to report to probation within 24 hours of his release from incarceration, which the court maintained was not a technical violation sheltered by Code § 19.2-306.1(A)(iii), requiring a probationer to report to the probation office within three days of release from incarceration. White's 2022 and 2023 plea agreements compelled him to report to probation within 24 hours of his release from incarceration. This distinct allegation—that White failed to report within 24 hours—was never raised against White in the MVR nor at the June 7, 2024 hearing. Having made these retrospective findings by letter

opinion, the trial court proceeded to indicate it was denying White's motion for reconsideration without further hearing. White appealed.

## ANALYSIS

White contends the trial court exceeded its authority under Code § 19.2-306(C) by imposing the balance of his suspended sentences at his June 7, 2024 revocation of probation hearing. This contention necessarily implicates examination of whether the trial court followed the statutory process due White, and whether its fixed findings justify the judgment.

*I. The statutory sentencing scheme sets limits for technical violations.*

Upon determining a defendant has violated the terms of his suspended sentence, a trial court may revoke that suspension and "impose a sentence *in accordance with* the provisions of [Code] § 19.2-306.1." Code § 19.2-306(C) (emphasis added). "On an appeal of a probation revocation, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013).

Pure questions of law such as interpreting the meaning of words in Code §§ 19.2-306 and -306.1, are reviewed de novo. *Green*, 75 Va. App. at 76. "[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Heart*, 75 Va. App. at 466 (quoting *Cuccinelli*, 283 Va. at 425).

"The newly enacted Code § 19.2-306.1 limits the period of active incarceration that a circuit court can impose for . . . certain 'technical violations' enumerated under [Code § 19.2-306.1(A)]." *Id.* at 460-61 (quoting *Green*, 75 Va. App. at 78). "Whereas Code § 19.2-306(C) does not distinguish between types of violations, Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Id.* at 466. "[T]he conduct statutorily defined as technical violations are specific requirements imposed on all probationers supervised by probation officers." *Diaz-Urrutia*, 77 Va. App. at 193. By contrast, "[n]on-technical violations include 'convict[ion] of a criminal offense that was committed after the date of the suspension' and 'violat[ion of] another condition other than (i) a technical violation [in subsection (A)] or (ii) a good conduct violation that did not result in a criminal conviction.'" *Thomas v. Commonwealth*, 77 Va. App. 613, 622 (2023) (second, third, and fourth alterations in original) (quoting Code § 19.2-306.1(B)).

Code § 19.2-306.1 places limits on active sentences for first and second technical violations, providing for no term of incarceration upon a first technical violation, and granting circuit courts discretion to impose, in some circumstances, up to 14 days' incarceration for a second violation. Code § 19.2-306.1(C). "The court may impose whatever sentence might have been originally imposed for a third or subsequent technical violation." *Id.* Under Code § 19.2-306.1(B), the trial court "may revoke the suspension and impose or resuspend any or all of that period previously suspended" for a violation other than a technical violation or a good conduct violation that did not result in a criminal conviction, as well as for a conviction of a criminal offense committed after the date of the suspension. Code § 19.2-306.1(B).

Accordingly, the trial court was required to determine whether any of the limits of Code § 19.2-306.1 applied to White.

*II. The trial court failed to follow the four-step process mandated by Diaz-Urrutia.*

"[A] sentencing court *must* engage in a four-step process to *classify the basis of the revocation* proceeding *before* determining what sentence it may impose." *Diaz-Urrutia*, 77 Va. App. at 193 (emphases added).[13] "First, the court must determine whether 'the violation conduct matches the conduct [specifically] listed in Code § 19.2-306.1(A).'" *Id.* (alteration in original) (quoting *Delaune v. Commonwealth*, 76 Va. App. 372, 383, *aff'd*, 302 Va. 644 (2023)). "If so, then the defendant has committed a technical violation and the sentencing limitations found in Code § 19.2-306.1(A) apply, regardless of whether the sentencing court included that conduct as 'another condition' of the defendant's suspended sentence." *Id.* at 194. "If the violation conduct does not match the conduct listed in Code § 19.2-306.1(A), the court must then determine whether 'another condition,' other than the generic good behavior condition of the defendant's suspended sentence covers the conduct." *Id.* "If so, then the court's sentencing authority is not restricted by Code § 19.2-306.1." *Id.* Third, "[i]f the defendant's sentencing order contained no other condition matching the violation conduct, then the court must determine whether the conduct resulted in a new criminal conviction." *Id.* "If so, then the court's sentencing authority is not restricted by Code § 19.2-306.1." *Id.* "Finally, if none of the above apply, then the court must determine whether the defendant has engaged in substantial misconduct amounting to a good conduct violation." *Id.*

The revocation events for White prior to 2024, namely in 2017 and 2023, were based on new law violations and were not technical violations as defined under Code § 19.2-306.1. Thus,

---

[13] "Absent a statutory mandate . . . a trial court is not required to give findings of fact and conclusions of law." *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982). With respect to the newly enacted Code § 19.2-306.1, however, the trial court was required to classify its basis for revocation of probation, something it did not do following the making of specific findings of fact as the basis for its judgment. Only "when no specific explanation is given by a trial court, [do] we presume the court followed the governing legal principles," which in the instant case the trial court did not. *See Pilati v. Pilati*, 59 Va. App. 176, 181 (2011).

any subsequent technical violations by White adjudicated jointly at one hearing qualify as a first technical violation. Code § 19.2-306.1(A). At the June 7, 2024 revocation hearing, the trial court failed to undertake the four-step analysis mandated by Code § 19.2-306.1. Neither the transcript nor the final order references the statute, let alone its application.

> A trial court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Murry v. Commonwealth*, 288 Va. 117, 122 (2014) (alteration in original) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "An abuse of discretion [thus] exists if the trial court fails to consider the statutory factors required to be part of the decisionmaking process." *Congdon v. Congdon*, 40 Va. App. 255, 262 (2003) (applying this concept in the context of family law). The trial court's failure to apply Code § 19.2-306.1 at the revocation hearing falls squarely within the definition of an abuse of discretion.

III. *The trial court's findings justify only a first technical violation.*

The trial court's discretion to revoke probation is fundamentally distinct from its duty to adjudicate guilt beyond a reasonable doubt. While the former permits broad latitude, that discretion is not without statutory limits. The Supreme Court has highlighted this distinction in stating, "revocation of a suspended sentence lies in the discretion of the trial court and that *this discretion is quite broad*." *Hamilton v. Commonwealth*, 217 Va. 325, 326 (1976) (emphasis added). Such discretion "afford[s] to trial courts a valuable means of bringing about the rehabilitation of offenders against the criminal laws." *Dyke v. Commonwealth*, 193 Va. 478, 484 (1952). Thus, it is axiomatic that the trial court has broad discretion to decide *whether* to revoke probation, and *which* findings to make.

- 25 -

While "[t]here is no *general requirement* that trial courts must state for the record the reasons underlying their decisions," the Supreme Court of Virginia has detailed exceptions for bail hearings, where there is a statutory mandate to make findings, like for habeas corpus actions, and for revocation of probation proceedings. *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015) (emphasis added); *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982); *Henderson v. Commonwealth*, 285 Va. 318, 326 (2013). For bail review hearings, "a court making such a decision has a duty to articulate the basis of its ruling sufficiently to enable a reviewing court to make an objective determination that the court below has not abused its discretion." *Shannon*, 289 Va. at 206. In a revocation of probation setting, where the trial court, like in bail review hearings, is afforded a large degree of discretion, the trial court was obliged to inform White "as to the evidence relied on and *reasons* for revoking [probation]." *Henderson*, 285 Va. at 326 (alteration in original) (emphasis added) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). The principle cited in *Shannon* and *Henderson* that a court making a discretionary judgment must give sufficient account of findings disclosing *its reasoning* makes practical sense in revocation of probation proceedings, for this is a mechanism whereby the trial court can fix the resulting sanction by the findings of fact it chooses to make. *Id.*; *Shannon*, 289 Va. at 206. The stated reasons in exercise of that discretion might potentially involve as little as a statement of reliance on the overall evidentiary record as supporting the judgment. Nevertheless, even that is not what occurred here. What the trial court cannot do is make specific findings supported by the record that dictate a result limited by statute, and then proceed to ignore such limitation.

At the June 7, 2024 hearing, the trial court recounted some of what it knew factually about White's cases, including his criminal history, stating,

> And then there's the new charges in—that he was convicted of in
> Page County. So Mr. White's criminal history is substantial. And
> it's one of the most voluminous that I've seen in twenty-four (24)

- 26 -

> years of doing this. *So the Court certainly starts and has to look at that.*

(Emphasis added). "[T]o look at that" is quite different from making a factual finding of reliance on the fact of which the trial court is aware in potential support of its judgment. A "finding" is "the *result* of a judicial . . . examination into matters of fact as *embodied* in the . . . decision of [the trial] court." *Finding*, *Webster's Third New International Dictionary* 852 (1993) (emphases added).

Here, instead, the trial court, in exercise of its "broad discretion," limited itself to making only two factual *findings* it accepted from the MVR of April 15, 2024, which the court gave as *the reasons* upon which it relied for the revocation of White's suspended sentences: "The Court certainly accepts the evidence in the major violation report that on March 11th, 2024, Mr. White tested positive for amphetamines. He failed to report to the probation office." When the trial court makes specific determinations accounting for its judgment in a *discretionary* probation revocation proceeding, this Court is "bound by the trial court's *findings* of historical fact unless 'plainly wrong.'" *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc) (emphasis added); *Accord Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008) (Appellate courts are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence."); *Jones v. Eley*, 256 Va. 198, 201 (1998) ("[A] trial court's factual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them."); *Bottoms v. Bottoms*, 249 Va. 410, 414 (1995) ("A reviewing court should never redetermine the facts on appeal."). "Where the record [as a whole] contains credible evidence in support of the *findings* made by" the trial court in support of its judgment, an appellate court "may not retry the facts or substitute [its] view of the facts for those of the trial court." *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 336 (1992) (emphasis added).

A trial court can revoke suspended sentences based on new convictions "[i]f *the court finds* the basis of a violation of the terms and conditions of a suspended sentence or probation is that the defendant was convicted of a criminal offense that was committed after the date of the suspension." Code § 19.2-306.1(B) (emphasis added). In sentencing White, the trial court made no such finding in its June 25, 2024 final order. As "a court speaks *only* through its written orders," *Moreau v. Fuller*, 276 Va. 127, 137 (2008) (emphasis added), the question ensues whether the absent finding is requisite in the sentencing order or at least when pronouncing sentence. "The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd. On the contrary, it is well established that every act of the legislature should be read so as to give reasonable effect to every word." *Jones v. Conwell*, 227 Va. 176, 181 (1984). Code § 19.2-306.1 can only thus be read to require the trial court to detail its *finding* basis when sentencing White and relying on a new law violation. The statute does not allow the trial judge to remain silent and have this Court backfill the requisite findings, for the opposite interpretation would render Code § 19.2-306.1(B) "useless." *Id.*

It would be erroneous for this Court, not being the trier of fact, to make additional findings of fact from the record to alter the level of fault flowing from the findings made by the trial court. This Court should instead "give deference to the trial court's *findings* of fact" and "review the trial court's application of the law to *those facts de novo*." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006) (emphases added). Further, this Court "should not simply rubber stamp every discretionary *decision* of [the] trial court. To the contrary, we have an obligation to review the record and, upon doing so, to reverse the judgment of the trial court if we find a clear abuse of discretion." *Walsh v. Bennett*, 260 Va. 171, 175 (2000) (emphasis added). Accordingly, the two factual findings enunciated by the trial court for its judgment as

- 28 -

the trier of fact, dictate White's level of culpability under the statutory scheme, and permit at most revocation of White's probation for a first technical violation, for which he cannot be incarcerated.  *See* Code § 19.2-306.1(A)(v) ("follow the instructions of the probation officer, be truthful and cooperative, and report as instructed"); -306.1(A)(vii) ("refrain from the use, possession, or distribution of controlled substances or related paraphernalia").

### IV. The trial court's post-hoc rationalization did not cure its failure to comply with Code § 19.2-306.1.

White raised his contention to the trial court that it had not complied with Code § 19.2-306.1 via motion for reconsideration.  Rather than convene a further hearing, the trial court addressed White's motion for reconsideration via a letter opinion dated July 12, 2024, in apparent recognition its prior sentencing order was factually deficient in failing to detail a basis supporting the sentence imposed.[14]  The trial court wrote in relevant part,

> § 19.2-306.1 is not applicable because the Defendant failed to report to probation within twenty-four (24) hours of his release from incarceration, which is not one of the conditions covered by § 19.2-306.1 *and the issue was not raised during the probation revocation hearing.*

(Emphasis added).

Ironically, the trial judge, in arguing White failed to raise the applicability of § 19.2-306.1 at the revocation hearing, effectively acknowledged no violation of the purported condition to report to probation within 24 hours was ever alleged against White in the MVR nor

---

[14] In the letter opinion, the trial judge stated he was directing his clerk's office to prepare an order of incorporation.  The record of the trial court was transmitted to this Court on August 7, 2024.  An addendum to the record conveyed on November 18, 2024, contains an order denying White's motion for reconsideration on November 13, 2024, but does not reference the July 12, 2024 letter opinion.  A letter opinion is not itself an order but rather merely an explanatory document that expresses the judge's reasoning and does not impose, modify, or vacate a judgment.  The Supreme Court of Virginia has emphasized repeatedly that "a court speaks *only* through its written orders."  *Moreau*, 276 Va. at 137 (emphasis added).  Thus, the letter opinion did not in any way modify the trial court's June 25, 2024 order.

by the Commonwealth at such proceeding. Further, the trial court did not specify the factual basis for this retrospective finding or the date it contended White failed to report "within twenty-four (24) hours of his release from incarceration."

Even if the condition had been validly alleged and adjudicated at the sentencing revocation hearing of June 7, 2024, it amounts to only a technical violation. "[W]hen analyzing whether a condition is a technical violation or non-technical special condition, the key inquiry is whether the violation conduct falls within the conduct enumerated in Code § 19.2-306.1(A)." *Shifflett v. Commonwealth*, 81 Va. App. 277, 294 (2024) (en banc). "[W]hen the violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a 'technical violation.'" *Commonwealth v. Delaune*, 302 Va. 644, 652 (2023) (quoting *Delaune*, 76 Va. App. at 383). Here, this Court is "bound by the plain meaning" of the word "within." *Heart*, 75 Va. App. at 466 (quoting *Cuccinelli*, 283 Va. at 425). The term "within" encompasses "including in." *Within*, *Webster's Third New International Dictionary*, *supra*, at 2627. Inasmuch as "24 hours" is included in the time frame of three days, the allegation of "failure to report within 24 hours" is subsumed by a plain and ordinary reading of Code § 19.2-306.1(A), failure to "(iii) report *within* three days of release from incarceration." (Emphasis added). The trial court "cannot evade the limiting sentencing scheme for technical violations by 'crafting "special conditions" that encompass conduct defined by the statute as a "technical violation."'" *Shifflett*, 81 Va. App. at 292 (quoting *Burford v. Commonwealth*, 78 Va. App. 170, 183 (2023)).

Furthermore, the trial court may not justify a sentencing revocation decision through a post-hoc letter opinion introducing a violation not raised at the revocation hearing. The trial court must generally base its decision on the evidence and arguments presented during the revocation hearing. The trial court "may not [retroactively] inject substantive meaning into the

[sentencing revocation] order that it does not contain." *Watts v. Commonwealth*, 82 Va. App. 428, 450 (2024) (en banc).

## CONCLUSION

For the foregoing reasons, I respectfully dissent. Because the trial court made only two findings—collectively, a first technical violation under Code § 19.2-306.1(A)—its imposition of active incarceration exceeded its authority. I would reverse the June 25, 2024 order revoking White's probation and imposing sentence, affirm the trial court's limited factual findings aforesaid, and remand the case for further proceedings consistent with this dissent. On remand, the trial court could resentence White without imposing active incarceration and reinstate or terminate supervised probation at its discretion.